FILED

November 3 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0456

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 363

IN RE THE PARENTING OF
L.F.A., D.F.A., D.F.A., minor children,

LINDA R. FILPULA,

Petitioner and Appellee,

v.

DUSTINE LANAE ANKNEY,

Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 06-658
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jeffrey A. Simkovic, Daniel G. Gillispie; Billings Legal, PLLC,
Billings, Montana

For Appellee:

Linda L. Harris; Harris Law Firm, P.C., Billings Montana

Submitted on Briefs:  May 28, 2009

Decided:  November 2, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     The Thirteenth Judicial District Court, Yellowstone County, determined Linda R. Filpula had standing to bring a parenting plan action regarding L.F.A., D.F.A., and D.F.A.  The court later entered judgment establishing a parenting plan under which Filpula and the biological mother of the children, Dustine Lanae Ankney, parent the children on alternating weeks.  Ankney appeals.  We affirm.

¶2     We restate the dispositive issues as follows:

¶3     Issue One:  Did the District Court err by allowing Filpula to bring a parenting plan action absent any finding or allegation that Ankney was an unfit parent?

¶4     Issue Two:  Did the District Court err in finding that Ankney had engaged in conduct "contrary to the child-parent relationship?"

BACKGROUND

¶5     Filpula and Ankney were involved in a 12-year-long relationship during which they lived together in Laurel, Montana, and Ankney gave birth to three children.  Both Ankney and Filpula were involved in every aspect of caring for the children, who were raised by the two women from the times of their births.

¶6     When Filpula and Ankney ended their relationship in 2006, Ankney chose to move from Laurel to Colstrip, Montana, and to take the children—all three of whom were by then of school age—with her.  Filpula objected to the relocation and filed this action, petitioning the District Court for a parenting plan regarding the children.

¶7     Ankney moved to dismiss this action on grounds that Filpula had no standing to

2

maintain it. The District Court denied that motion. Then, following a hearing, the court implemented an interim plan under which Filpula and Ankney had equal parenting time with the children, in Laurel, during alternating weeks. Two years later, after another hearing at which both parties presented additional evidence, the court concluded it is in the best interests of the children that Filpula and Ankney share parenting, on alternating weeks and alternating holidays. The court adopted the interim plan, with minor adjustments, as its Final Parenting Plan. Ankney appeals.

## STANDARDS OF REVIEW

¶8 Our general standard of review for child custody decisions is whether the trial court abused its discretion. *In re Marriage of Graham*, 2008 MT 435, ¶ 8, 347 Mont. 483, 199 P.3d 211. However, we review a district court's interpretation and application of statutes for correctness. Our review of a question of a statute's constitutionality is plenary. *Kulstad v. Maniaci*, 2009 MT 326, ¶ 50, 352 Mont. 513, ___ P.3d ___.

## DISCUSSION

¶9 *Issue One: Did the District Court err by allowing Filpula to bring a parenting plan action absent any finding or allegation that Ankney was an unfit parent?*

¶10 Ankney contends a parent and child relationship may be established only by birth or through adoption under Montana's Uniform Parentage Act, §§ 40-6-101 through 40-6-131, MCA, and that a parent must be found unfit before a third party may be awarded parental rights. She further contends the District Court's decision infringes her fundamental right to parent, relying on two Montana cases, *In re Parenting of J.N.P.*, 2001 MT 120, 305 Mont. 351, 27 P.3d 95, and *Polasek v. Omura*, 2006 MT 103, 332

3

Mont. 157, 136 P.3d 519, and also citing *Troxel v. Granville,* 530 U.S. 57, 120 S. Ct. 2054 (2000).

¶11 Ankney's argument draws into question the constitutionality of the 1999 Montana Legislature's amendments to statutes concerning parenting proceedings initiated by nonparents, specifically §§ 40-4-211 and 40-4-228, MCA. In our recent decision in *Kulstad,* we discussed all three of the above cases as part of our consideration of constitutional challenges to the nonparental statutes. We observed that the 1999 Montana Legislature amended the law to recognize specifically a child's constitutional rights in nonparental parenting proceedings. *Kulstad,* ¶ 57; *see* § 40-4-227, MCA.

¶12 We distinguished *Kulstad* from *J.N.P.* on the basis that the nonparents in *J.N.P.* sought actual custody instead of a parental interest. *Kulstad,* ¶ 62. We further noted the nonparents in *J.N.P.* had not satisfied the statutory prerequisite of establishing a child-parent relationship through a petition filed under § 40-4-211, MCA, and, as a result, they could not rely upon the nonparental statutes in seeking custody. *Kulstad,* ¶ 63. We observed that *Polasek* was filed under the grandparent contact provisions of §§ 40-9-101 through 40-9-103, MCA, not under the nonparental statute. *See Kulstad,* ¶ 68. Further, neither *J.N.P.* nor *Polasek* interprets or applies the 1999 version of the nonparental statutes at issue here.

¶13 As to *Troxel,* we noted the United States Supreme Court's statement that the Washington visitation statute under challenge in that case allowed *anyone* to be awarded visitation. *Kulstad,* ¶ 70. After so stating, the Court limited the scope of its decision, saying it "would be hesitant to hold that specific nonparental visitation statutes violate the

4

Due Process Clause as a *per se* matter." *Troxel*, 530 U.S. at 73, 120 S. Ct. at 2064. We recognized in *Kulstad* that our nonparental statutes are significantly more restrictive than the statute at issue in *Troxel*. Under § 40-4-211(4), MCA, only a person who has established a "child-parent relationship" with a child may petition for a parenting plan, and the petitioner must demonstrate three elements by clear and convincing evidence: that the natural parent engaged in conduct contrary to the child-parent relationship, that the petitioner has established a child-parent relationship as defined in § 40-4-211, MCA, and that it is in the child's best interests for the relationship to continue. *Kulstad*, ¶ 70; § 40-4-228(2), MCA. Ultimately, we ruled the appellant had failed to carry her burden of proving beyond a reasonable doubt that §§ 40-4-211 and 40-4-228, MCA, impermissibly infringed on her constitutional right to parent her children. *Kulstad*, ¶ 72. We affirmed the district court's award of a parental interest to a nonparent, the statutory requirements of §§ 40-4-211 and 40-4-228, MCA, having been met. *Kulstad*, ¶ 91.

¶14 Ankney also cites two California cases not discussed in *Kulstad*: *Elisa B. v. Superior Court*, 37 Cal. 4th 108 (2005), and *Nancy S. v. Michele G.*, 228 Cal. App. 3d 831 (Cal. App. 1st Dist. 1991). Ankney claims the rights granted to the biological mother's same-sex partner in *Elisa B.* were dependent on California's enactment of a domestic partnership statute. Pointing out that Montana does not have a domestic partnership statute, Ankney suggests Montana must follow the prior California rule as set forth in *Nancy S.*, that a mother's same-sex partner may not claim parental rights over a child in whose upbringing the partner has participated. However, the present case is controlled by Montana statutes, not by the California statutes at issue in *Elisa B.* and *Nancy S.* We

5

conclude the California cases have no precedential value here.

¶15 Next, arguing that Filpula has no historically-protected interest in the parenting of L.F.A., D.F.A., and D.F.A., Ankney cites *Michael H. v. Gerald D*., 491 U.S. 110, 109 S. Ct. 2333 (1989). In that case, the United States Supreme Court affirmed a California Court of Appeal ruling that a putative biological father had no due process right to visit his daughter, under a California statute which created a presumption that the girl was the daughter of another man—the husband of the girl's mother. The Court's decision in *Michael H*. was based not only on California statute, but also on the historically-protected interest of the husband within the marital family. Because the present case does not involve an argument asserting historically-protected interests within the marital family, *Michael H*. is of no assistance here.

¶16 As outlined above, §§ 40-4-211 and 40-4-228, MCA, place clear restrictions on the circumstances under which a nonparent may claim a child-parent relationship with a child and bring a parenting plan action. The Montana Legislature also has provided that a parent's constitutionally-protected interest in parental control of a child shall yield to the best interests of the child when the parent's conduct is contrary to the child-parent relationship. *See* § 40-4-227(2)(b), MCA. In addition, § 40-4-228(5), MCA, specifically provides it is not necessary for a court to find a natural parent unfit before awarding a parental interest to a third party.

¶17 In this case, the District Court found Filpula is a person with an established child-parent relationship with L.F.A., D.F.A., and D.F.A. The court found "[t]here is no dispute that [Filpula] was involved in every aspect of caring and providing for these

6

children." The court further found that Filpula undisputedly met all of the criteria established by § 40-4-211, MCA, relating to a child-parent relationship, and that the evidence established Filpula has been a primary caretaker of each of the three children since their births.

¶18 Based on our determination in *Kulstad* that §§ 40-4-211 and 40-4-228, MCA, pass constitutional muster, and on Filpula's establishment of the statutory prerequisite of having a child-parent relationship with the children, we hold the District Court did not err by allowing her to bring a parenting plan action without a finding or allegation that Ankney was unfit.

¶19 *Issue Two: Did the District Court err in finding that Ankney had engaged in conduct "contrary to the child-parent relationship?"*

¶20 Section 40-4-228(2)(a), MCA, sets forth one requirement for awarding a parental interest to a person other than a natural parent: "the natural parent has engaged in conduct that is contrary to the child-parent relationship." Ankney argues she did not engage in conduct "contrary to the child-parent relationship" by allowing Filpula to care for the children. She further argues that, under Montana law, caregivers are not entitled to parental rights merely by virtue of their caregiver status.

¶21 It is true that, under Montana law, caregivers are not entitled to parental rights merely by virtue of their caregiver status. As we observed in *Kulstad*, ¶ 70, and above, in order to be awarded a parental interest under § 40-4-228, MCA, a party first must establish a child-parent relationship with the child or children.

¶22 In this case, as discussed above, the District Court determined Filpula had

established a child-parent relationship with the three children. The court then had discretionary authority to determine whether Ankney acted contrary to her child-parent relationship, provided that its findings are supported by substantial evidence. *See Kulstad*, ¶ 78, *citing Toavs v. Bull*, 2006 MT 68, ¶ 7, 331 Mont. 437, 133 P.3d 202. In this regard, the District Court's uncontested findings included that Filpula's child-parent relationship with the children arose as a result of a joint decision by her and Ankney. The court found Ankney voluntarily permitted the children to remain continuously in the care of Filpula for a significant period of time so that Filpula stood and stands in *loco parentis* to the children. The court found Ankney "shared parenting of the children with [Filpula] and, as a result, relinquished a portion of her parental authority to [Filpula]." Based on its findings and on the history of the parties and their children, the court ultimately found "[Ankney] engaged in a course of conduct which allowed [Filpula] to act as a parent to these children." We hold that the District Court did not abuse its discretion in finding Ankney engaged in conduct contrary to the child-parent relationship.

¶23 In closing, we observe that the District Court's findings address the three necessary elements for a court's consideration of a parenting plan petition: Ankney engaged in conduct that is contrary to the child-parent relationship, Filpula established a child-parent relationship between herself and the children, and it is in the best interests of the children that Ankney and Filpula alternate parenting time with them. Because we affirm the District Court's decision based on that court's determination that Filpula presented clear and convincing evidence meeting the requirements of §§ 40-4-211 and 40-4-228, MCA, we need not address Ankney's argument that the court erred when it

found, under an alternative argument, that Ankney was equitably estopped from denying that Filpula was a "parent."

¶24   Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER

Justice James C. Nelson, concurring.

¶25   I concur with the Court's Opinion.  I also reiterate my comments in my concurrence to the Court's decision in *Kulstad v. Maniaci*, 2009 MT 326, ¶¶ 99-104, 352 Mont. 513, ___ P.3d ___ (Nelson, J., concurring).

/S/ JAMES C. NELSON

Justice Jim Rice, concurring.

¶26   I concur that the conclusions reached by the Court in *Kulstad* would require that this case be affirmed under application of the general rule of *stare decisis*.  However, it remains evident that the Court has abandoned *stare decisis* and the clear constitutional protections on which Filpula, like Maniaci, relied for her arguments, as explained in my dissent in *Kulstad*.  Further, the Court continues its rejection of the plain wording and plain meaning of the statute and its legislative history, in order to reach the absurdly inverse conclusion that Filpula, despite being a caring parent to her children, has

9

"engaged in conduct contrary to the child-parent relationship." Opinion, ¶ 22. In my view, the Court has decided these cases, not pursuant to the judicial duty of applying the law, but by legislating a result that accords with its will.


/S/ JIM RICE