DA 12-0125

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 228

IN RE THE PARENTING OF
M.M.G.,

GAIL ARMSTRONG and
RONALD ARMSTRONG,

        Petitioners and Appellants,

    v.

ARRAH MARIE LANE and
MICHAEL SHANE GRUMAN,

        Respondents and Appellees.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                    In and For the County of Musselshell, Cause No. DR 11-14
                    Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Michelle R. Lee, Harper Law Firm, P.C., Billings, Montana

        For Appellee (Arrah Marie Lane):

                George T. Radovich, Radovich Law Firm, Billings, Montana

                            Submitted on Briefs:  August 22, 2012
                                      Decided:  October 16, 2012

Filed:

                            _____
                                         Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Gail and Ron Armstrong (Armstrongs) seek a parental interest in child M.M.G. Armstrongs filed a petition for a proposed parenting plan in the Fourteenth Judicial District, Musselshell County. The District Court dismissed Armstrongs' petition for lack of jurisdiction. We reverse and remand.

¶2 Armstrongs present the following issue on appeal:

¶3 *Whether the District Court possessed jurisdiction to grant parental rights to Armstrongs even though the natural mother's parental rights have not been terminated.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Armstrongs began raising M.M.G. when the child was approximately one year old. Gail was stopped at a gas station in Roundup, Montana, one Friday in 2001 when she saw Arrah Lane (Lane) holding the child M.M.G. Gail did not know Lane. Gail commented to Lane what a beautiful child M.M.G. was. Lane then asked Gail if she wanted M.M.G. Lane proceeded to gather M.M.G.'s things from her vehicle and hand them to Gail.

¶5 Armstrongs cared for M.M.G. for the weekend. Lane contacted Gail the following Monday to pick up M.M.G. Gail told Lane she was willing to care for M.M.G. if Lane needed help. Lane began leaving M.M.G. with Gail several days a week. This arrangement progressed to the point where Lane began leaving M.M.G. with Armstrongs for weeks at a time until M.M.G. lived primarily with Armstrongs.

¶6 When M.M.G. was four, Lane informed Armstrongs that she was no longer interested in parenting M.M.G. Lane left M.M.G. with Armstrongs. Armstrongs enrolled M.M.G. in school in Roundup and in associated extracurricular activities. Armstrongs cared for

M.M.G. as they would a child of their own.  Lane visited M.M.G. a few times a year for the next six years.  In 2011, when M.M.G. was ten years old, Lane took M.M.G. for a weekend visit.  Lane called Armstrongs to inform them that she was moving to Wyoming with M.M.G.

¶7     Armstrongs filed a petition for a parenting plan.  The District Court initially granted an interim parenting plan that provided that M.M.G. would continue to live with Armstrongs.  The District Court reversed course, however, when Lane objected.  The District Court concluded that Armstrongs could not seek a parenting plan unless Lane's parental rights had been terminated.  The District Court dismissed Armstrong's petition for the parenting plan for lack of jurisdiction.  The court further determined that the interim parenting plan was without legal effect.  Armstrongs appeal.

STANDARD OF REVIEW

¶8     We review de novo a district court's determination regarding its subject matter jurisdiction.  *BNSF Ry. Co. v. Cringle*, 2010 MT 290, ¶ 11, 359 Mont. 20, 247 P.3d 706.

DISCUSSION

¶9     *Whether the District Court possessed jurisdiction to grant parental rights to Armstrongs even though the natural mother's parental rights have not been terminated.*

¶10    The District Court declined to apply the nonparental statutes because Armstrongs proposed a parenting plan that places M.M.G. almost exclusively with Armstrongs, rather than merely allowing Armstrongs to visit M.M.G.  We deemed this distinction important in *In re Parenting of J.N.P. v. Knopp*, 2001 MT 120, ¶ 6, 305 Mont. 351, 27 P.3d 953.  Knopps had not established a child-parent relationship, however, so they were able to seek only

3

visitation. Here Armstrongs seek to prove that they have established a child-parent relationship. The nonparental statutes place no restrictions on the type of parenting plans that a nonparent may seek after the nonparent has established a child-parent relationship. The District Court must consider the proposed parenting plan based on the best interests of the child. Section 40-4-228(2), MCA. In rare cases, the best interests of the child may result in a child living primarily with a third-party nonparent.

¶11 The District Court dismissed Armstrongs' petition for lack of jurisdiction because M.M.G.'s natural parents' parental rights had not been terminated. The District Court relied on *J.N.P.* to support its dismissal of Armstrongs' petition. A third party petitioned for a parenting plan in *J.N.P.* after a child had lived with them for two months. The natural mother had intended to leave temporarily the child with the Knopps, her aunt and uncle, while she found a place to live and employment in a new city. We agreed with the district court that it could not adopt Knopps' parenting plan under these circumstances unless the natural mother's parental rights had been terminated. *J.N.P.*, ¶ 25. Knopps had not established a child-parent relationship with J.N.P. As a result, the Knopps were not able to seek a parenting plan pursuant to the nonparent statutes set forth in § 40-4-228, MCA.

¶12 If Armstrongs can demonstrate that they have established a child-parent relationship with M.M.G., the District Court will have jurisdiction to consider whether to grant Armstrongs a parental interest in M.M.G. Section 40-4-211(4)(b), MCA. To establish a child-parent relationship, Armstrongs first must show that they provided for the physical needs of M.M.G. by supplying food, shelter, and clothing. Armstrongs also must demonstrate that they provided M.M.G. with necessary care, education, and discipline.

Section 40-4-211(6)(a), MCA. Armstrongs must then establish that their relationship with M.M.G. existed on a day-to-day basis through interaction, companionship, interplay, and mutuality that fulfilled M.M.G.'s psychological needs for a parent as well as M.M.G.'s physical needs. Section 40-4-211(6)(b), MCA. And finally, Armstrongs must demonstrate that they met M.M.G.'s need for continuity of care by providing permanency or stability in residence, schooling, and activities outside of the home. Section 40-4-211(6)(c), MCA.

¶13 Armstrongs' petition asserts facts that, taken as true, could establish a child-parent relationship. Armstrongs cared for M.M.G. nearly full-time from 2004 to 2011. Armstrongs provided M.M.G. with food, shelter, clothing, and a stable home. Armstrongs enrolled M.M.G. in school. They have helped M.M.G. with homework, have attended her parent teacher conferences, and her school plays. Proof of these factual allegations could demonstrate that Armstrongs have established a child-parent relationship with M.M.G. Section 40-4-211(6), MCA.

¶14 If Armstrongs can persuade the District Court that they have established a child-parent relationship with M.M.G., the District Court will have jurisdiction to hear their petition for a parenting plan. Section 40-4-211(4), MCA. The District Court may then award Armstrongs a parental interest if Armstrongs can show that M.M.G.'s natural parents acted contrary to their child-parent relationship with M.M.G., and that it would be in the best interests of M.M.G. to continue her child-parent relationship with Armstrongs. Section 40-4-228, MCA. Armstrongs must present clear and convincing evidence that Lane and M.M.G.'s natural father, Michael Gruman, engaged in conduct contrary to the child-parent relationship. Section 40-4-228(2)(a).

5

¶15 This Court twice has determined that a parent acted contrary to her child-parent relationship when the parent ceded her exclusive parenting authority to a nonparent by allowing the nonparent to help raise the children. *Kulstad v. Maniaci*, 2009 MT 326, 352 Mont. 513, 220 P.3d 595; *Filpula v. Ankney*, 2009 MT 363, 353 Mont. 220, 220 P.3d 391. The nonparent in each case functioned in a parental role with her same sex partner for an extended period. We declined in *Kulstad* to allow the adoptive parent to "rewrite the history" of the fact that she and her partner had lived together for more than ten years and jointly had raised the children in the household. *Kulstad*, ¶ 78. The District Court in *Filpula* did not abuse its discretion in finding the natural parent's conduct in allowing her partner "to act as a parent to these children" constituted action "contrary to the child-parent relationship." *Filpula*, ¶ 22. More recently in *Grice v. Price*, 2011 MT 50, 359 Mont. 386, 251 P.3d 127, we rejected the natural father's claim that missed visitations and failure to pay child support did not constitute conduct contrary to the child-parent relationship. *Grice*, ¶ 18.

¶16 Armstrongs further must establish by clear and convincing evidence that it would be in M.M.G.'s best interest to continue the child-parent relationship that they have developed. Section 40-4-228(2)(b), MCA. Nothing in the Montana nonparental statutes require Lane and Gruman be found unfit before a court may award a parental interest to Armstrongs. Section 40-4-228(5), MCA; *Kulstad*, ¶ 75. The nonparental statutes recognize that a parent possesses a constitutional right to raise her child. This standard further recognizes, however, that the parent may forfeit that exclusive right when the parent acts contrary to the child-parent relationship. Section 40-4-228(2)(a), MCA. Montana law considers the best interests

of the child when a parent has acted contrary to her child-parent relationship. Section 40-4-227(2)(b), MCA.

¶17 We remand to the District Court to conduct a hearing in accordance with § 40-4-228, MCA, to determine whether Armstrongs have established a child-parent relationship with M.M.G. A determination by the District Court that Armstrongs have established a child-parent relationship with M.M.G. would allow the District Court to decide whether to grant Armstrongs a parental interest, and to consider Armstrongs' proposed parenting plan. Section 40-4-211(4)(b), MCA. In order to grant Armstrongs a parental interest, the District Court must determine that M.M.G.'s natural parents acted contrary to their child-parent relationship with M.M.G. Section 40-4-228(2)(a), MCA. The court further must evaluate whether a decision to continue M.M.G.'s child-parent relationship with Armstrongs would be in M.M.G.'s best interest. Section 40-4-228(2)(b), MCA. We further determine that the District Court's August 25, 2011 "Ex Parte Order Adopting Joint Petitioner's Proposed Parenting Plan" and the October 31, 2011 "Order Reinstating Interim Parenting Plan Pending Further Proceedings" should be reinstated immediately pending the outcome of these proceedings.

/S/ BRIAN MORRIS

We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT

7