No. 04-663

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 102

IN RE THE GRANDPARENT-GRANDCHILD
CONTACT OF PAMELA STEWART,

        Petitioner and Respondent,

  v.

DAVE EVANS,

        Respondent and Appellant.

APPEAL FROM:    The District Court of the Twenty-First Judicial District,
                In and For the County of Ravalli, Cause No. DR 02-08,
                Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Howard C. Greenwood, Attorney at Law, Hamilton, Montana

        For Respondent:

                John D. Greef, Attorney at Law, Hamilton, Montana

Submitted on Briefs:  April 12, 2005

Decided:  May 9, 2006

Filed:

_____
                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Dave Evans (Evans), father of J.E., appeals from the decision of the Twenty-First Judicial District Court, Ravalli County, concluding that it retained jurisdiction and that the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Title 40, Chapter 7, Montana Code Annotated, governs jurisdictional matters relating to the grandparent-grandchild contact petition initiated by J.E.'s maternal grandmother, Pamela Stewart (Stewart).

¶2 We consider the following issues on appeal:

¶3 Does the UCCJEA govern jurisdictional matters relating to grandparent-grandchild contact proceedings?

¶4 Did the District Court retain jurisdiction over the grandparent-grandchild contact proceeding?

BACKGROUND

¶5 Prior to the present action, Evans had obtained full custody of J.E. after J.E.'s mother had been imprisoned. On January 22, 2002, Stewart filed a petition for grandparent-grandchild contact with J.E. under the provisions of Title 40, Chapter 9, Montana Code Annotated.[1] In an order dated July 24, 2002, the District Court granted Stewart overnight contact with J.E. On September 20, 2002, Evans notified the District Court that he and J.E. had moved on June 19, 2002, to Kentucky. The District Court

---

[1]For ease of reference, we hereinafter refer to Title 40, Chapter 9, Montana Code Annotated, as "Chapter 9." Because the UCCJEA is found in Title 40, Chapter 7, Montana Code Annotated, we will use "UCCJEA" and "Chapter 7" interchangeably.

modified its July 2002 order on January 8, 2003, granting Stewart twenty-eight days of contact with J.E. every summer and contact each year from December 26 until the start of school following the holidays.

¶6 Nearly a year later, on December 19, 2003, Evans filed an emergency motion to set aside the January 2003 order due to statements that J.E. had made to therapists alleging abuse by Stewart. The District Court granted this emergency motion and subsequently held a hearing on the matter on February 10, 2004. At the hearing, Evans argued that the UCCJEA did not apply to Stewart's petition because grandparent-grandchild contact proceedings fall under a separate statutory scheme. Evans's counsel articulated the argument as follows:

> MR. GREENWOOD [attorney for Evans]: Now, further, Judge, I would contend that the Uniform Custody and Jurisdiction Act [sic] applies to issues of custody between the parents. That is not this case. The Respondent, Dave Evans, is the custodial parent of [J.E.], and Pamela Stewart is a grandparent with grandparent visitation rights. She is not a contender for actual custody. It's merely contact and visitation. And I don't think that the fact that this action is pending in the State of Montana should really fall under the restrictions under the Uniform Child Custody Jurisdiction Act [sic], which pertains if an action is pending in another state. This is not truly a custody issue that is pending here. This is a visitation issue under a separate statute.

Evans argued in the alternative that even if the UCCJEA applied to the petition, then Kentucky, not Montana, was the proper jurisdiction to hear the matter. The District Court expressly rejected this latter argument, and by retaining jurisdiction, it impliedly rejected the former. The District Court entered an order on April 8, 2004, requiring that a parenting evaluation be completed in Montana, with costs for the evaluation divided

3

equally between Evans and Stewart, and with transportation costs born completely by Evans. Evans appeals.

## STANDARD OF REVIEW

¶7 This Court reviews a district court's conclusions of law for correctness. *Kirchner v. State, Dept. of Public Health and Human Services*, 2005 MT 202, ¶ 10, 328 Mont. 203, ¶ 10, 119 P.3d 82, ¶ 10.

## DISCUSSION

¶8 In his notice of appeal, Evans states only that he is appealing the District Court's order from April 8, 2004. However, in his opening brief Evans argues that the District Court lacked jurisdiction to enter both the January 8, 2003, and the April 8, 2004, orders. The record, as it relates to jurisdictional issues, consists solely of the transcript of the hearing on February 10, 2004. Neither the transcript nor the District Court's order provide insight into the District Court's rationale for concluding that the UCCJEA provided the proper framework for deciding the jurisdictional question. Though neither the January 2003 order nor the April 2004 order specifically addresses jurisdiction, implicit therein is a rejection of Evans's jurisdictional objections and a decision by the District Court that it had jurisdiction to proceed with the matter.

4

¶9	Although we conclude that the UCCJEA does not apply to grandparent-grandchild contact proceedings, we hold, for the reasons set forth below, that the District Court nevertheless retained jurisdiction over this matter.[2]

¶10	**Does the UCCJEA govern jurisdictional matters relating to grandparent-grandchild contact proceedings?**

¶11	This is an issue of first impression. Evans contends that the jurisdictional provisions of Chapter 7 do not apply to grandparent-grandchild contact petitions brought under Chapter 9 because Chapter 9 proceedings are of a different character than the UCCJEA's custody proceedings. Additionally, Evans contends that the District Court lacked jurisdiction to issue the January 2003 and April 2004 orders.

¶12	Stewart responds that the UCCJEA acted to establish jurisdiction in the District Court for both the January 2003 order and the April 2004 order, pointing to the Act's definition of "child custody determination":

>	As used in this chapter, the following definitions apply:
>
>	. . . .
>
>	(3)(a) "Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or

---

[2]Although not argued by the parties, we note that the April 2004 order is not listed as an appealable order under Rule 1, M.R.App.P. However, the issue of a court's subject matter jurisdiction may be presented at any time, including on appeal, *see* Rule 12(h)(3), M.R.Civ.P., and *Balyeat Law, P.C. v. Pettit*, 1998 MT 252, ¶ 15, 291 Mont. 196, ¶ 15, 967 P.2d 398, ¶ 15. We have previously undertaken review of jurisdictional issues within child custody proceedings on an interlocutory basis. *See In re Marriage of Stoneman*, 2003 MT 25, 314 Mont. 139, 64 P.3d 997 (reversing, prior to final adjudication of the merits, the district court's denial of a motion to decline jurisdiction).

*visitation with respect to a child.* The term includes a permanent, a temporary, an initial, and a modification order.

(b) The term does not include an order relating to child support or other monetary obligation of an individual.

Section 40-7-103, MCA (emphasis added). Stewart argues that her contact petition fell within the above definition of "child custody determination" because the petition concerns "visitation with respect to a child," which she contends is indistinguishable from the "contact" with a child that grandparents may seek under Chapter 9. Because § 40-7-103(3)(a), MCA, references "visitation" within its definition of "child custody determination," Stewart argues, in effect, that the entirety of the grandparent contact statutes have thereby been imported into the UCCJEA's jurisdictional structure. However, a thorough review of Chapters 7 and 9 does not support this construction of the statutes.

¶13     We observe that the word "visitation," as it is used in the definition of "child custody determination," is at least facially different from "contact," which is employed consistently throughout Chapter 9. More importantly, however, even if this Court were to hold that there is no legally significant difference between "visitation" and "contact" and were to conclude therefrom that the *jurisdictional* framework of the UCCJEA applies to grandparent-grandchild contact proceedings, we would likewise be compelled to conclude that the *procedural* framework of the UCCJEA applies to those proceedings. An examination of these two statutory schemes demonstrates why this cannot be the case.

6

¶14 First, grandparents are not designated as parties under the UCCJEA unless they serve as parents or guardians to the child. Section 40-7-202(1), MCA, governing the establishment of exclusive, continuing jurisdiction over child custody proceedings, refers to the "child," "parent," and "person acting as a parent" as the relevant parties whose presence or absence from the state must be determined. Notably absent from this provision is any reference to a grandparent. Indeed, the Commissioners' Note to § 40-7-202(1), MCA, states the following:

> The [National Conference of Commissioners on Uniform State Laws] decided that a remaining grandparent or other third party who claims a right to visitation, should not suffice to confer exclusive, continuing jurisdiction on the State that made the original custody determination after the departure of the child, the parents and any person acting as a parent. The significant connection to the original decree State must relate to the child, the child and a parent, or the child and a person acting as a parent.

¶15 Similarly, § 40-7-305(1)(c), MCA, requires that a person seeking to register an out-of-state child custody determination in Montana must provide to a district court in this state "the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child custody determination sought to be registered." Thus, this provision assumes that the relevant parties in a child custody determination are parents, not grandparents, unless they are acting as parents.

¶16 The UCCJEA is directed toward the custody of or visitation with children by parents or the persons acting as their parents; that is, the UCCJEA is concerned with children and their caregivers. There is no indication that the Act's interstate jurisdictional

7

provisions were intended to be available to grandparents seeking contact with their grandchildren who were being parented by others. In contrast, the text and tenor of Chapter 9 indicate that this scheme addresses a matter not directly related to the raising and care of children, but, rather, to requests of grandparents to spend time with their grandchildren.

¶17 Our recent decision in *In re Parenting of D.A.H.*, 2005 MT 68, 326 Mont. 296, 109 P.3d 247, provides guidance in this regard. There, we stated that

> [T]he legislature has enacted a variety of statutory schemes pertaining to custody of children and the manner in which a third party, non-parent, may intercede in the parent-child relationship. *Girard v. Williams*, 1998 MT 231, ¶ 17, 291 Mont. 49, ¶ 17, 966 P.2d 1155, ¶ 17. *See* Title 41, Chapter 3, MCA (termination of parental rights for abuse and neglect); Title 40, Chapter 6, MCA (the Uniform Parentage Act); and Title 40, Chapter 4, MCA (the Uniform Marriage and Divorce Act)(UMDA).

*D.A.H.*, ¶ 8. Missing from our listing of statutory schemes is any reference to Chapter 9, and for good reason, because Chapter 9 is not a vehicle by which a grandparent can "intercede in the parent-child relationship." Rather, it permits grandparents some means of obtaining non-custodial contact with their grandchildren. Moreover, the "UCCJEA is not intended to be a vehicle whereby persons with no legal right to custody may sidestep the statutory pre-requisites to obtaining parental rights." *D.A.H.*, ¶ 11. Applying the UCCJEA's jurisdictional provisions to Chapter 9 petitions involving parties that, as in the present case, may live hundreds or even thousands of miles apart may effectively accomplish just such a circumvention. We stated in *D.A.H.*, ¶ 13, that "it is not our office to render the custody statutes passed by the legislature superfluous." Likewise, it is not

8

our office to render superfluous the UCCJEA's statutory predicates to applying its jurisdictional provisions.

¶18    In summary, the UCCJEA is directed toward parties acting as parents, and contains no directive which applies its jurisdictional provisions to grandparent-grandchild contact proceedings.  Likewise, Chapter 9 does not include any textual indication that grandparent contact proceedings are subject to the procedural or the jurisdictional requirements of the UCCJEA.  Therefore, we hold that the UCCJEA does not govern jurisdictional matters relating to grandparent-grandchild contact proceedings under Chapter 9.  To the extent that the District Court's decision to retain jurisdiction was based on an application of the UCCJEA, it was in error.

¶19    **Did the District Court retain jurisdiction over the grandparent-grandchild contact proceeding?**

¶20    Although he does not dispute that the parties and J.E. resided in Montana at the time Stewart filed her petition for grandparent contact, Evans argues that the District Court did not have "jurisdiction over J.E." in January 2003 or in April 2004 because prior to both dates J.E. had moved to Kentucky and remained there for more than six months. Evans's argument resembles a challenge to the District Court's *personal* jurisdiction over J.E.; however, because J.E. is not a party to the petition and due to the context in which the argument is raised, we construe Evans's argument to be a challenge to the court's jurisdiction over the *subject matter* of Stewart's petition for contact with J.E.  Since the

9

UCCJEA does not resolve the matter before us, we apply the more general law relating to subject matter jurisdiction.

¶21 Jurisdiction is a court's "right to determine and hear an issue," *Wippert v. Blackfeet Tribe* (1993), 260 Mont. 93, 102, 859 P.2d 420, 425, and it is conferred over a particular subject matter "only by the Constitution and the laws." *Haggerty v. Sherburne Mercantile Co.* (1947), 120 Mont. 386, 389, 186 P.2d 884, 888. Article VII, Section 4, of the Montana Constitution vests district courts with original jurisdiction over "all civil matters and cases at law and in equity," as does § 3-5-302, MCA. Chapter 9, pursuant to which Stewart brought the instant petition, empowers a district court to "grant to a grandparent of a child reasonable rights to contact with the child . . . ." Section 40-9-102(1), MCA. Consequently, the District Court possessed jurisdiction to hear Stewart's petition for contact with J.E. and to issue a ruling upon it.

¶22 Moreover, where

> the jurisdiction of a court is exclusive and has once lawfully attached it cannot be ousted by subsequent events or facts arising in the cause, but the court may proceed to final judgment unless some constitution or statute operates to divest that particular court of jurisdiction.

*Matter of W.L.* (1993), 260 Mont. 325, 329, 859 P.2d 1019, 1021 (quoting *Curry v. McCaffery* (1913), 47 Mont. 191, 196, 131 P. 673, 675). Evans has not directed our attention to any constitutional provision or law that would divest the District Court of its jurisdiction of the present matter, nor do we perceive any. In the absence of a clearer articulation by the District Court on the issue, we cannot say that it applied the correct rationale in its decision to retain jurisdiction. However, we have often said that "this

10

Court will uphold the decision of a district court, if correct, regardless of the lower court's reasoning in reaching its decision." *Nelson v. Nelson*, 2005 MT 263, ¶ 22, 329 Mont. 85, ¶ 22, 122 P.3d 1196, ¶ 22 (quoting *Grover v. Cornerstone Const. N.W., Inc.*, 2004 MT 148, ¶ 10, 321 Mont. 477, ¶ 10, 91 P.3d 1278, ¶ 10). Therefore, to the extent that it was based on an application of general jurisdictional law, we hold that the District Court's decision that it could exercise jurisdiction over the petition is affirmed.[3]

¶23 Evans raises other issues, arguing, for example, that the District Court abused its discretion by ordering certain evaluations or that the District Court is prejudiced against him. However, these other issues, unlike the jurisdictional issues, cannot be raised by interlocutory appeal and are not properly before this Court absent a final resolution of the matter below.

CONCLUSION

¶24 The UCCJEA does not govern Chapter 9 proceedings; thus, its processes are not available for grandparent-grandchild contact disputes. Rather, the general law governing subject matter jurisdiction applies to Chapter 9 petitions, which in the present case results in the conclusion that the District Court had jurisdiction over the contact proceeding filed before it. Applications of those general principles will govern the remainder of the proceeding.

---

[3]We cannot discern from the record whether the District Court has made any ruling under statutory or common law authority outside the context of the UCCJEA on the question whether Montana is an inconvenient forum. Accordingly, we express no opinion on the matter.

11

¶25     Affirmed in part and remanded for further proceedings.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS