DA 08-0505

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 428N

IN RE THE PARENTING OF:
J.D.B. and J.R.B.,
          Minor children,

J.M.B.,

          Petitioner and Appellant,

     and

E.B.,

          Respondent, Appellee and Cross-Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DR 2008-0001
                 Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

          For Appellant:

               Kevin T. Sweeney, Attorney at Law, Billings, Montana

               J. Greg Tomicich, Attorney at Law, Billings, Montana

          For Appellee:

               Nancy G. Schwartz, N.G. Schwartz Law, PLLC, Billings, Montana

               Jill Deann LaRance, Kathryn S. Syth, LaRance & Syth, P.C.,
               Billings, Montana

                              Submitted on Briefs:  October 28, 2009

                                      Decided:  December 18, 2009

Filed:

_____

Justice John Warner delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 2006 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and disposition to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    J.M.B. (Grandmother) appeals from an order entered in the Thirteenth Judicial District Court, Yellowstone County, dismissing her petition for custody of her grandchildren, J.D.B and J.R.B. The children's mother, E.B. (Mother) cross-appeals from an order entered in the same case granting Grandmother court-ordered contact with J.D.B and J.R.B. Mother also appeals from the District Court's order denying her motion to require Grandmother to pay Mother's attorney fees. We affirm.

¶3    The issue concerning the lives of J.D.B and J.R.B., who are the subjects of this unfortunate battle, is whether the District Court erred in dismissing Grandmother's petition for custody of the children, and instead ordered that Grandmother may have limited contact with them without following some recommendations of a therapist retained by Mother.

¶4    Grandmother's son, D.B., and Mother were married and had J.D.B. and J.R.B., the two children who are the subjects of this case. During the marriage, Grandmother took care of the children on a regular basis. In November 2006, while D.B. and Mother were engaged in a difficult divorce proceeding, D.B. was killed in a work-related accident.

3

After the death of D.B., the Montana Department of Public Health and Human Services (DPHHS) petitioned for and was granted temporary investigative authority over the children because Mother had health problems that made it difficult for her to be an adequate parent. Pursuant to this authority, DPHHS placed J.D.B. and J.R.B. with Grandmother. DPHHS sought to have J.D.B. and J.R.B. adjudicated as youths in need of care. However, before the District Court entered an order that the children were dependant or neglected, DPHHS moved to dismiss the petition. The dependant and neglect action was dismissed and the children were placed in Mother's care.

¶5 On January 2, 2008, Grandmother filed a "Petition for Parenting Plan; For Establishment of Parental Interest" pursuant to Title 40, chapter 4, MCA (2007). In her petition, Grandmother averred that Mother was, at that time, the subject of a Title 41 action alleging the children were neglected or dependant. Grandmother claimed that she had established a child-parent relationship with the children and that Mother had engaged in conduct that was contrary to the child-parent relationship. Grandmother asked that the Court designate her as the primary residential custodian of the children and that Mother have reasonable visitation and pay child support.

¶6 Mother filed a motion to dismiss Grandmother's parenting action. Mother correctly cited § 40-4-228, MCA (2007), for the proposition that Grandmother had no standing to file a petition for custody because Grandmother had acknowledged in her petition that a Title 41 proceeding was pending.

¶7 Grandmother then filed an amended petition in which she again prayed for primary custody of the children, but added an alternative request for court-ordered

4

visitation with the children. Grandmother abandoned her request for child support and also averred that the dependant and neglect action under Title 41 had been dismissed after she had filed her original petition.

¶8     Mother filed a response in which she argued that Grandmother's request for grandparent-grandchild contact must be dismissed because she had failed to comply with the requirements of Title 40, chapter 9, MCA (2007).

¶9     Grandmother and Mother appeared on April 30, 2008, for an evidentiary hearing. After an off-the-record conference in chambers, the District Court entered an order from the bench granting Mother's motion to dismiss Grandmother's petition for custody. The court stated that it would then proceed to hear Grandmother's petition for grandparent visitation under Title 40, chapter 9, MCA (2007).

¶10    The District Court heard testimony from numerous parties over the course of several days. The children's former therapist, Dr. Jackson, testified about the children's relationship with Grandmother. The thrust of Dr. Jackson's testimony was that the children should have contact with Grandmother. However, Dr. Roche, who was the children's and Mother's therapist, testified about her ongoing work with the children and recommended that Grandmother not have visits with J.D.B. and J.R.B. until after she had submitted to a psychological evaluation, participated in counseling, and completed parenting classes.

¶11    Grandmother testified that she had no desire to parent the children and that she had never been interested in parenting J.D.B. and J.R.B. because she had already raised her own family. She said that her goal was to arrange visitation with her grandchildren.

5

¶12 For her part, Mother testified concerning her health issues, her relationship with her children before D.B.'s death, and her current relationship with her children. She testified that she would allow Grandmother to have contact with J.D.B. and J.R.B. if Grandmother first complied with Dr. Roche's recommendations.

¶13 On September 4, 2008, the District Court issued an order granting Grandmother unspecified and limited contact with J.D.B. and J.R.B. The District Court found that Mother was not opposed to contact between the children and Grandmother, and that she only sought to impose preconditions to such contact. Specifically, the District Court found that Dr. Roche's recommendations that Grandmother be required to submit to psychological evaluation, counseling, and parenting classes were not warranted. The court also found that the evidence is clear and convincing that the children's best interests will be served by normal and usual contact with Grandmother.

¶14 The District Court ordered that Grandmother must accept that she is a grandparent and not a parent, must respect and support all of Mother's parental decisions, must have Mother's permission before making any gifts to the children and before even mentioning gifts to the children, that all rules and child-rearing practices are the province of Mother, and that her parenting decisions must be observed by Grandmother in all respects.

¶15 The court subsequently imposed a sanction under M. R. Civ. P. 11 and ordered Grandmother to pay Mother's attorney fees. However, on November 20, 2008, the District Court reconsidered, concluded that Grandmother's actions in this case did not constitute harassment, delay, dilatory, or abusive tactics, and ordered that Grandmother did not have to pay Mother's attorney fees.

¶16 Grandmother appeals from the District Court's order dismissing her petition for third-party custody. Mother cross-appeals from the court's orders granting grandparent-grandchild contact and denying her motion for an award of attorney fees.

¶17 The District Court is in the best position to hear testimony and evaluate evidence. This Court will not reverse a district court's findings of fact unless if they are supported by the evidence and are not clearly erroneous. *See Matter of Adoption of Doe*, 277 Mont. 251, 255, 921 P.2d 875, 878 (1996).

¶18 In support of her position on appeal, Grandmother engages in an extensive analysis of the validity of Montana's third-party custody statutes, compares Montana's statutes to those enacted in other jurisdictions, and concludes that the statutes appropriately balance the fundamental constitutional rights of parents and children under Montana law.

¶19 However, Grandmother's counsel asked Grandmother during her testimony whether she was interested in parenting J.D.B. and J.R.B., and Grandmother replied that she was not. When asked whether she had ever been interested in serving as their parent, Grandmother replied, "No, actually, I have never been interested in being a parent again. I raised my family." Grandmother testified that her goal in the lawsuit was simply to arrange visitation. In view of her testimony, there can be no doubt that Grandmother elected to abandon her claim for custody of J.D.B. and J.R.B., and the District Court did not err by dismissing it.

¶20 For her part, Mother complains on appeal that the District Court erred in ordering that Grandmother have limited contact with J.D.B. and J.R.B. because the title of the

7

petition was wrong, Grandmother did not give DPHHS notice of the petition, and Mother did not have adequate notice of Grandmother's prayer for contact as opposed to custody. And, Mother claims that the District Court failed to make the necessary findings to award grandparent-grandchild conduct under § 40-9-102, MCA (2007).

¶21   Mother ignores, however, that she testified that she is not opposed to contact between Grandmother and J.D.B. and J.R.B. Mother does not disagree with the District Court that it is in the children's best interest to have contact with their Grandmother. Nor does Mother disagree with the conditions that the District Court's order places on such contact. All that Mother appeals is that Grandmother is not required to submit to psychological evaluation, to undergo counseling, and to complete parenting classes before she sees the children.

¶22   In this regard, the District Court carefully considered and rejected the recommendations of Dr. Roche. In particular, the court noted that the children had been placed with Grandmother by DPHHS, and the court found as a matter of fact that based on the evidence it was unnecessary for Grandmother to submit to psychological evaluation, counseling, and parenting classes. The evidence supports this finding and it is not clearly erroneous.

¶23   In this instance, Mother is a fit parent. Thus, in order for Grandmother to have contact with the children over Mother's objection, Grandmother must prove by clear and convincing evidence that it is in the children's best interest to have contact with her, and that the presumption in favor of the parent's wishes has been rebutted. *Polasek v. Omura*, 2006 MT 103, ¶ 15, 332 Mont. 157, 136 P.3d 519 (citing *Evans v. McTaggart*,

8

88 P.3d 1078 (Alaska 2004)). Grandmother has carried her burden of proof as the District Court found by clear and convincing evidence that it is in the children's best interest to have contact with their Grandmother. And, after hearing the basis of Mother's objection, the District Court found that Mother's demands are not warranted. Thus, the presumption in favor of Mother's wishes has been overcome. Upon review of the record, considering that J.D.B. and J.R.B. have established a significant relationship with Grandmother, that Mother does not wish to deny Grandmother all contact with the children, that the basis of Mother's objection is unfounded, and that the District Court has ordered that Mother will remain in control of all parenting decisions, we conclude that the District Court did not err in issuing its order granting Grandmother limited contact.

¶24 On appeal, Mother seeks a reversal of the District Court's order that Grandmother is not required to pay Mother's attorney fees. Mother filed a motion for an award of attorney fees. In September 2008, the District Court ordered Grandmother to pay Mother's attorney fees because Grandmother had filed her original petition before the Title 41 action by DPHHS had been terminated. After noting that Grandmother had filed her petition seeking third-party custody of J.D.B. and J.R.B. twenty-two days before she was allowed to do so under Title 40, the District Court found that the Title 41 case was "mostly decided" by the time Grandmother had filed her petition. The District Court thus concluded that Grandmother's premature filing was not the harassment, delay, dilatory, or abusive tactics that M. R. Civ. P. 11 is meant to punish and deter, and thus vacated its earlier order.

¶25 We review de novo a district court's determination that a party has violated M. R. Civ. P. 11. We review a district court's findings of fact underlying that conclusion to determine if such findings are clearly erroneous. *Byrum v. Andren*, 2007 MT 107, ¶ 19, 337 Mont. 167, 159 P.3d 1062.

¶26 Considering the problems experienced by Mother in parenting J.D.B. and J.R.B., Grandmother's participation in their upbringing, and the course of this case that raises the suspicion that it is as much the attorneys as the parties that have prolonged its resolution, we will not reverse the District Court's decision on M. R. Civ. P. 11 sanctions.[1]

¶27 We conclude that the District Court did not err by dismissing Grandmother's petition for third-party custody of J.D.B. and J.R.B. We conclude that the District Court did not err in entering its order that Grandmother may have limited contact with J.D.B. and J.R.B. under the conditions stated therein. The District Court did not err in denying Mother's M. R. Civ. P. 11 motion for attorney fees.

¶28 Affirmed.

/S/ JOHN WARNER

We concur:

/S/ MIKE McGRATH

---

[1] Mother testified that she had spent almost $200,000 in attorney fees. While no exact amount was introduced into evidence, the amount of attorney fees seems, to say the least, large. Considering the positions of Mother and Grandmother, that the children should be raised by Mother and have limited contact with Grandmother, which is what the District Court ordered, this amount seems especially large.

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS


Justice James C. Nelson concurs and dissents.

¶29    On appeal, J.M.B., the grandmother of the two minor children, among other insignificant questions, raises the issue of whether the District Court erred in dismissing her Title 40 custody claim.  I concur in our decision to affirm the trial court on this issue and on J.M.B.'s other issues.  That said, I do not agree on the Court's decision as to the cross-appeal issues.  I now address those.

¶30    E.B., the mother of the two minor children, raises three issues by way of a cross-appeal:  (1) whether J.M.B. had standing to file a third-party custody petition; (2) whether the District Court properly entered an order for grandparent-grandchild contact; and (3) whether the District Court's recission of its previous award of attorney's fees was clear error.  I would reverse on each of these issues.  Since this Opinion is not being published and will not serve as precedent, I will only summarize my reasons for reversing the cross-appeal issues.

¶31    As to the first cross-appeal issue, standing is determined at the time an action is brought.  *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154-55 (10th Cir. 2005); *Becker v. Federal Election Com'n,* 230 F.3d 381, 386 n. 3 (1st Cir. 2000), *cert. denied*, *Nader v. Federal Election Com'n*, 532 U.S. 1007, 121 S. Ct. 1733 (2001).  At the time J.M.B. filed her action under Title 40, chapter 4, MCA, § 40-4-228(1), MCA, specifically

11

precluded her custody action because of the on-going youth-in-need-of-care proceeding under Title 41, chapter 3, MCA. J.M.B. had no standing to file a custody action, and her petition was, therefore, properly dismissed.

¶32 Moreover, during the evidentiary hearing, J.M.B. admitted that she was not seeking parentage—i.e., custody—rights. Thus, J.M.B. mooted the very claim she now raises on appeal.

¶33 Finally, once dismissed for lack of standing, J.M.B.'s petition could not be extant and could not, somehow, morph into a grandparent-contact action under Title 40, chapter 9, MCA. Therefore, the trial court erred in entering an order for grandparent-grandchild contact. J.M.B. never actually filed a Title 40, chapter 9, MCA, grandparent-contact action; rather, she and the trial court simply morphed her custody action (assuming, arguendo, it was extant at all) into a contact action. As E.B. correctly points out, J.M.B. never complied with the procedural requirements of a Title 40, chapter 9, MCA, action. We have rejected the sort of approach used by J.M.B. here—i.e., trying to accomplish grandparent contact governed by Title 40, chapter 9, MCA, via some other statutory scheme. *See Stewart v. Evans*, 2006 MT 102, ¶¶ 12-13, 16-18, 332 Mont. 148, 136 P.3d 524. As E.B. argues, the District Court granted J.M.B. relief beyond that requested in her pleadings—and relief to which she was not entitled, in any event.

¶34 As to the second cross-appeal issue, E.B. argues that J.M.B. is not entitled to grandparent contact on the facts here. The trial court made no statutorily-required findings, on the basis of clear and convincing evidence, that grandparent contact was in the best interests of the children or that the presumption in favor of E.B.'s wishes was

12

rebutted. *See* § 40-9-102(5), MCA. Indeed, the court here reversed the presumption. The evidence before the court supports E.B. E.B. was not unilaterally opposed to contact, but only contact after J.M.B. had complied with Dr. Brenda Roche's recommendations that J.M.B. submit to a psychological evaluation, participate in counseling and complete parenting classes. E.B. was a fit parent, and J.M.B. was not entitled to have contact with the children as a matter of right, but only after complying with the statutory scheme under § 40-9-102, MCA.

¶35 The evidence before the court showed that J.M.B. was antagonistic to E.B., had issues with her, and that she tried to turn the children against their mother and tried to buy the children's loyalty with expensive gifts. The burden was on J.M.B. to prove grandparent contact would be beneficial to the children; it was not E.B.'s burden to prove it would not be. Section 40-9-102, MCA. The court's interpretation of the contact statutes sweeps with too broad a brush and is patently in error.

¶36 Finally, as to the third cross-appeal issue, the matter of attorney's fees, I would reverse and order the trial court to impose M. R. Civ. P. 11 sanctions. At all times pertinent here, J.M.B. was a practicing attorney. She signed her Title 40, chapter 4, MCA, custody petition in blatant violation of the fact that there was an on-going youth-in-need-of-care proceeding—which she herself prompted in the first place and then promoted. *See* § 40-4-228(1), MCA. J.M.B. then, on appeal, sought to overturn the trial court's custody determination, notwithstanding that she had mooted her own custody argument during the evidentiary hearing—claiming that she never really wanted custody, but only visitation. Finally, J.M.B. never did file a Title 40, chapter 9, MCA,

13

grandparent-contact petition, yet she put E.B. to the expense of fighting that in court as well.

¶37    The Court refuses to reverse the District Court's decision on M. R. Civ. P. 11 sanctions, partly on the basis that this case "raises the suspicion that it is as much the attorneys as the parties that have prolonged its resolution," Opinion, ¶ 26, and that the amount of attorney's fees referred to by E.B. "seems, to say the least, large," Opinion, ¶ 26 n. 1.   The amount of attorney's fees claimed should play no part in whether sanctions should or should not be awarded.   A determination on the actual amount of attorney's fees to be imposed as a sanction is more properly determined at an evidentiary hearing on remand.

¶38    It is obvious that J.M.B. was using her status as a practicing attorney to bully E.B., to run up E.B.'s costs and expenses, and to put E.B. to the expense of having to hire an attorney to defend her parental rights—when as it turned out, and despite her pleadings to the contrary, all that J.M.B. wanted was grandparent contact.   J.M.B. should be punished for her conduct by being required to pay all of E.B.'s attorney's fees, costs and expenses of the proceedings in the trial court and here on appeal.   Moreover, and aside from M. R. Civ. P. 11, I would sanction J.M.B. under M. R. App. P. 19(5) for filing a frivolous and vexatious appeal—one for which there were no substantial grounds.

¶39    I do not agree with the "no harm—no foul" approach which the trial court and this Court take in this matter.   While this approach achieves a feel-good result for the majority, it completely ignores and completely mangles the pertinent statutory schemes at issue—all to the detriment and prejudice of E.B.

14

¶40    On that basis I concur and dissent.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins in the Concurrence and Dissent of Justice James C. Nelson.

/S/ PATRICIA O. COTTER

Justice Jim Rice, concurring in part and dissenting in part.

¶41    On Grandmother's appeal, I concur with the Court's determination to affirm on the ground that Grandmother abandoned her claim for a parental interest of the children.

¶42    On Mother's cross appeal, I dissent from the Court's decision to affirm the District Court.  As mentioned by Justice Nelson's concurring opinion, the District Court failed to determine whether the presumption in favor of Mother's contrary wishes as a fit parent— including her pre-conditions for such visitation—had been rebutted in accordance with *Polasek v. Omura*, 2006 MT 103, 332 Mont. 157, 136 P.3d 519, and the subsequent legislative codification of that decision.  Therefore, I would reverse the grandparent contact order.

¶43    I further agree with Justice Nelson's dissent regarding the imposition of attorney fees and would likewise reverse that determination.

/S/ JIM RICE

15