No. 05-107

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 103

PETRA MARCELLA POLASEK,
n/k/a PETRA MARCELLA CASEY,

          Petitioner and Appellant,

   v.

ALEXANDER KENJI OMURA,

          Respondent and Respondent.

IN RE THE GRANDPARENT-GRANDCHILD
CONTACT OF DANIELA and PETER POLASEK,

          Respondents and Respondents.

APPEAL FROM:    The District Court of the Eighth Judicial District,
                   In and For the County of Cascade, Cause No. CDR 97-390,
                   Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            James Goetz and Trent Gardner, Goetz, Gallik & Baldwin,
            Bozeman, Montana

            Mark F. Higgins, Ugrin, Alexander, Zadick & Higgins,
            Great Falls, Montana

       For Respondents:

            David A. Hopkins, Attorney at Law, Great Falls, Montana

                                Submitted on Briefs:  December 21, 2005

                                           Decided:  May 9, 2006

Filed:

                                   Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Petra Casey (Petra) appeals the order entered in the Eighth Judicial District Court, Cascade County, awarding Petra's parents, Peter and Daniela Polasek (Polaseks), contact with Petra's daughter, Olivia Omura (Olivia). We reverse and remand for further proceedings.[1]

¶2     The following issues are dispositive on appeal:

¶3     Did the District Court err in granting the Polaseks' petition for contact with their grandchild, Olivia?

¶4     Does Petra's failure to timely notify the Attorney General of her challenge to the District Court's application of § 40-9-102(2), MCA, procedurally bar her appeal?

## BACKGROUND

¶5     Petra and Alexander Omura (Alexander), Olivia's father, were married in 1996, and they subsequently divorced in 1997 when Olivia was six months old. After the divorce, Petra became the primary custodial parent, and she and Olivia moved from Montana to Grosse Point, Michigan, to live with the Polaseks. Petra and Olivia stayed with the Polaseks for three to five months before they moved into their own house. They later moved from Grosse Point to Rochester, Minnesota, in the fall of 1999. Daniela Polasek stayed with Petra and Olivia in October and November 1999 to assist in the transition. However, sometime in November Petra and Daniela had a falling out, resulting in Daniela returning to Grosse Point.

---

[1] The caption of the case has been changed to conform to the requirements of § 40-9-101(2), MCA.

¶6 From the time of Petra's divorce in August 1997 until November 1999, the Polaseks provided substantial care for Olivia while Petra, a physician, worked and studied for her Boards. Despite Polaseks' submission of affidavits on Petra's behalf in a later custody dispute with Alexander, and despite Petra's assurances—including a written promise—that she would permit future visits between her parents and Olivia, the relationship did not improve. Eventually, Petra forbade all contact between the Polaseks and Olivia, including communication by telephone and mail.

¶7 As Intervenors in the dissolution action between Alexander and Petra, the Polaseks filed a petition for contact with Olivia on February 2, 2004, pursuant to §§ 40-9-101 *et seq.*, MCA. Following a bench trial, the District Court entered its findings of fact, conclusions of law, and an order on February 9, 2005, granting the Polaseks unsupervised contact with Olivia on the third weekend of every other month and for two weeks every summer. In addition, the Polaseks were granted the right of telephone contact once per week and of correspondence by mail. The District Court also ordered the parties to attend trans-parenting classes. From this order Petra appeals.

## STANDARD OF REVIEW

¶8 "We review a district court's interpretation and application of statutes for correctness." *In re T.H.*, 2005 MT 237, ¶ 35, 328 Mont. 428, ¶ 35, 121 P.3d 541, ¶ 35.

## DISCUSSION

¶9 **Did the District Court err in granting the Polaseks' petition for contact with their grandchild, Olivia?**

¶10 Petra argues that, in light of the United States Supreme Court's holding in *Troxel v. Granville* (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49, in order to determine the "best interest of the child" as required in § 40-9-102(2), MCA,[2] a court must first determine whether the child's custodial parent is unfit or abusive or whether the child is dependent or neglected. Absent such a finding, Petra contends, the court must conclude that the parent's wishes regarding grandparent contact comprise the "best interest" of the child. Alternatively, Petra argues that *Troxel* requires a court considering a grandparent contact petition to assign "special weight" to a fit parent's wishes when determining what is in a child's best interest.

¶11 The Polaseks respond that *Troxel* does not require grandparent contact to be awarded *only* where a parent is unfit or abusive or where the child is dependent or neglected. They contend that the District Court properly applied the "best interest" standard.[3]

¶12 In *Troxel*, the United States Supreme Court considered whether a Washington nonparental visitation statute infringed upon a parent's fundamental right "to make

---

[2]Section 40-9-102(2), MCA, reads as follows: "Grandparent-grandchild contact granted under this section may be granted only upon a finding by the court, after a hearing, that the contact would be in the best interest of the child."

[3]The Polaseks also argue that Petra's violation of her written promise that they would be permitted contact with Olivia constitutes a breach of contract. However, no breach of contract theory was raised below, and we will not consider it here. *In re Estate of Kindsfather*, 2005 MT 51, ¶ 34, 326 Mont. 192, ¶ 34, 108 P.3d 487, ¶ 34 ("This Court has long held that it will not address either an issue raised for the first time on appeal or a party's change in legal theory.").

decisions concerning the care, custody, and control" of her children. *Troxel*, 530 U.S. at 66, 120 S.Ct. at 2060, 147 L.Ed.2d at 57. The plurality opinion[4] written by Justice O'Connor and joined by three other justices described the statute at issue:

> According to the statute's text, "*any person* may petition the court for visitation rights *at any time*," and the court may grant such visitation rights whenever "visitation may serve *the best interest of the child*." . . . [I]n practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

*Troxel*, 530 U.S. at 67, 120 S.Ct. at 2061, 147 L.Ed.2d at 57-58 (emphasis in original).

¶13 The Troxels, paternal grandparents to Granville's two daughters, petitioned for visitation with their grandchildren. Granville had been willing to provide the Troxels some visitation with her children but not as much as the Troxels sought. The trial court granted the Troxels' petition, but the Washington Court of Appeals reversed that decision. The Washington Supreme Court affirmed the Court of Appeals, concluding that the visitation statute as written violated the United States Constitution. The United States Supreme Court affirmed the Washington Supreme Court under a different rationale. The plurality concluded that the statute—as applied to Granville, rather than as written—was unconstitutional, reasoning that: the language emphasized in the above quotation made the statute "breathtakingly broad," *Troxel*, 530 U.S. at 67, 120 S.Ct. at 2061, 147 L.Ed.2d at 57; the trial court failed to give any special weight to the fit parent's wishes, *Troxel*, 530 U.S. at 69, 120 S.Ct. at 2062, 147 L.Ed.2d at 58; and, the trial court

---

[4]Justices Souter and Thomas filed separate concurring opinions.

5

improperly applied a "presumption in favor of grandparent visitation," *Troxel*, 530 U.S. at 72, 120 S.Ct. at 2063, 147 L.Ed.2d at 60. The plurality emphasized that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children," *Troxel*, 530 U.S. at 66, 120 S.Ct. at 2060, 147 L.Ed.2d at 57, and concluded:

> [S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. See, *e.g.*, *Flores*, 507 U.S. at 304.
>
> The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests. More importantly, it appears that the Superior Court applied exactly the opposite presumption.

*Troxel*, 530 U.S. at 68-69, 120 S.Ct. at 2061-62, 147 L.Ed.2d at 58.

¶14 The *Troxel* plurality opinion is consistent with our jurisprudence and helps guide our construction of the "best interest of the child" standard contained in Montana's grandparent contact statute. *Troxel* held that parents have a fundamental constitutional right "to make decisions concerning the care, custody, and control of their children," *Troxel*, 530 U.S. at 66, 120 S.Ct. at 2060, 147 L.Ed.2d at 57, and we have likewise held that "[i]t is well-established that a natural parent's right to care and custody of his or her child is a fundamental liberty interest . . . ." *In re C.R.O.*, 2002 MT 50, ¶ 10, 309 Mont. 48, ¶ 10, 43 P.3d 913, ¶ 10. Further, parents are presumed to act in their child's best

6

interest. *Troxel*, 530 U.S. at 68, 120 S.Ct. at 2061, 147 L.Ed.2d at 58 (citing *Parham v. J.R.* (1979), 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101).

¶15 Thus, *Troxel* instructs that when a grandparent petitions for contact with a grandchild, a court must first inquire whether the child's parent is fit; that is, the court must determine whether the parent "adequately cares for his or her children." *Troxel*, 530 U.S. at 68, 120 S.Ct. at 2061, 147 L.Ed.2d at 58. If the parent is fit, a presumption arises in favor of the parent's wishes because "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel*, 530 U.S. at 72-73, 120 S.Ct. at 2064, 147 L.Ed.2d at 61. If the parent is not fit, no presumption arises and the parent's wishes are due no deference.[5] The close scrutiny that we apply to any infringement on a person's right to parent a child, *see In re Guardianship of Aschenbrenner* (1979), 182 Mont. 540, 544-45, 597 P.2d 1156, 1160, and *Pierce v. Pierce* (1982), 198 Mont. 255, 260, 645 P.2d 1353, 1356, requires that the petitioning grandparent prove by clear and convincing evidence that it is in the child's best interest to have contact with the grandparent, and, in the case of an objecting fit parent, that the presumption in favor of the parent's wishes has been rebutted. *See Evans v. McTaggart* (Alaska 2004), 88 P.3d 1078 (holding that requiring a petitioner to establish by clear and convincing evidence that visitation is in the best interests of the child would provide effective protection for a parent's choice, except where the choice is plainly contrary to a

---

[5]We express no opinion about what implications, if any, a determination in a grandparent contact proceeding that a parent is not fit may have in other contexts.

child's best interests); *cf. In re Custody & Parental Rights of P.M.*, 1998 MT 264, ¶ 12, 291 Mont. 297, ¶ 12, 967 P.2d 792, ¶ 12 (a party seeking termination of parental rights must demonstrate by clear and convincing evidence that every requirement set forth in the statute has been satisfied).

¶16    Here, there is no indication that the District Court inquired into Petra's fitness as a parent.  Moreover, the District Court failed to accord Petra's wishes any deference.  To the contrary, in its findings of fact the District Court referred to her wishes only dismissively:

> Other than Petra and Dr. Allen's [Olivia's clinical psychologist] concern that the grandparents may impart something negative about the mother, there is not a scintilla of evidence in this case that unfettered visitation between grandparents and child would be in anyway [sic] harmful to the child.

¶17    We express no opinion regarding Petra's fitness as a parent or on the weight of the evidence in the case.  However, because the District Court did not apply the correct analysis, as outlined above, we reverse the District Court's ruling and remand for further proceedings.

¶18    **Does Petra's failure to notify the Attorney General of her challenge to the District Court's interpretation and application of § 40-9-102(2), MCA, procedurally bar her appeal?**

¶19    The Polaseks contend that this Court should not consider Petra's appeal because she failed to notify the Attorney General of her challenge to the District Court's application of § 40-9-102(2), MCA—which they argue is an attack upon the statute's

8

constitutionality—as required by Rule 24(d), M.R.Civ.P., and Rule 38, M.R.App.P. Petra replies that Rule 24(d), M.R.Civ.P., requires notice to the Attorney General only when a party brings a facial constitutional challenge to a statute, not when a party challenges a court's unconstitutional application of a statute, as she contends that she does here. In any event, Petra maintains, notice was given to the Attorney General in accordance with Rule 38, M.R.App.P., albeit belatedly, and the Attorney General has not intervened, which Petra argues cures any failure to notify that office pursuant to Rule 24(d), M.R.Civ.P.

¶20 We need not address the merits of either argument. The issue raised by Petra and briefed in this appeal is not whether the best interest standard for grandparent-grandchild contact set forth in § 40-9-102(2), MCA, is unconstitutional. Indeed, *Troxel* does not mandate that the statute be rendered unconstitutional, and we have not declared it to be. Rather, the issue Petra has raised is whether use of the statute's best interest standard, without first considering the requirements of *Troxel*, violated her due process rights. Our decision today requires that grandparent proceedings must begin, in accordance with *Troxel*, with the presumption that a fit parent acts in the child's best interest. From that point of beginning, the statute's best interest standard, as enacted, remains intact as the standard by which a grandparent's request for contact must be judged. Although arguably an "as applied" challenge to the statute, Petra's appeal, in reality, is a request for proper delineation of parental rights which must precede application of the grandparent visitation statute and the best interest standard stated therein.

9

¶21    Reversed and remanded for further proceedings.


                                        /S/ JIM RICE



We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS