**FILED**

November 5 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 14-0231

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 290

IN RE THE GRANDPARENT/GRANDCHILD
CONTACT OF C.A.G. and E.J.M.G.,

CLAIRE GARDNER,

      Petitioner and Appellee,

ANGELA GARDNER,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 13-1101
Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Kevin T. Sweeney, Attorney at Law, Billings, Montana

      For Appellee:

        Jeff A. Turner, Tow, Ball, Mackey, Sommerfeld & Turner, PLLP,
Billings, Montana

            Submitted on Briefs:  October 15, 2014
                     Decided:  November 5, 2014

Filed:

                _____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1	Angela Gardner (Angela) appeals the order entered in the Thirteenth Judicial District Court, Yellowstone County, awarding contact between her two minor children and their paternal grandmother, Claire Gardner (Claire). We affirm in part, reverse in part, and remand to the District Court.

¶2	We rephrase the issues as:

¶3	Issue One: Whether the District Court misapplied provisions of the grandparent-grandchild contact statute by granting visitation rights over the objection of the natural mother?

¶4	Issue Two: Whether the District Court erred by adopting parenting-plan rights and duties in the Grandparent-Grandchild Contact Plan?

## PROCEDURAL AND FACTUAL BACKGROUND

¶5	Angela and Paul Gardner were married and had two children, C.A.G., born November 2005, and E.J.M.G., born August 2007 (hereinafter "the children"). Angela has another child from a previous relationship. Claire is the paternal grandmother of the children. In March 2011, the parties were in the process of dissolving their marriage when Paul died. Angela has since remarried and resides in Billings, Montana. Claire lives in Issaquah, Washington, with her daughter and son-in-law.

¶6	In October 2013, Claire petitioned the District Court for grandparent-grandchild contact and a hearing was held on March 31, 2014. The District Court granted Claire weekly phone contact, occasional weekend visits in Billings, Montana, and two weeks at

Claire's home in Washington during the summer. Claire is responsible for all travel costs associated with the visits and must provide advance notice to Angela.

¶7     The record indicates a history of contact between Claire and the children. Claire lived with the family for extended periods of time, including when the couple first married, when both children were born, and when Angela decided to continue her education. During these times, Claire provided childcare for the three children. When not living with Angela and Paul, Claire enjoyed frequent weekend visits. The relationship was positive and warm.

¶8     After Angela and Paul separated contact continued, however the relationship between Claire and Angela deteriorated. The parties characterize the divorce as "messy" and Claire served as a supervisor for Paul's visits with the children. After Paul died, the parties' relationship continued to decline, with each blaming the other for communication problems. Eventually, Angela blocked Claire's number and relocated without informing her of the new address.

¶9     Angela expressed concern over Claire's pain medication regimen. In 2005, Claire was injured at work and now takes a series of medications including Percocet and morphine. Claire testified that she takes her medication in accordance with her daily level of physical activity. She currently works as a nanny for four-year-old twins and testified that her injuries and medications do not interfere with her ability to care for children. George Blackard, a family friend who serves on a veteran's advocacy board with Claire, also testified to her competency and ability with children.

## STANDARD OF REVIEW

¶10 "We review a district court's interpretation and application of statutes for correctness." *Polasek v. Omura*, 2006 MT 103, ¶ 8, 332 Mont. 157, 136 P.3d 519 (citations omitted).

## DISCUSSION

¶11 *Issue One: Whether the District Court misapplied provisions of the grandparent-grandchild contact statute by granting visitation rights over the objection of the natural mother?*

¶12 The Legislature has adopted provisions providing for grandparent-grandchild contact along with procedures to be followed in such cases. Sections 40-9-101 to 103, MCA. The Court is required to make a determination as to whether the objecting parent is a fit parent, that is, whether the parent adequately cares for the child. Section 40-9-102(2), MCA. Contact may be granted over a fit parent's objections, if clear and convincing evidence establishes that the contact would be in the best interest of the child and the presumption in favor of the parent's wishes has been rebutted. Section 40-9-102(4), MCA; *Polasek*, ¶ 15.

¶13 Angela argues that the District Court misapplied the statute by not according her wishes proper deference. Angela testified she did not oppose contact between the children and Claire, offered a specific proposal, but indicated that she was opposed to extended stays in Washington. She maintains that, in light of the United States Supreme Court's holding in *Troxel v. Granville,* 530 U.S. 57, 120 S. Ct. 2054 (2000) and this Court's decision in *Polasek*, the District Court erred in dismissing the Mother's

arguments. Angela argues that the District Court incorrectly substituted its own judgment in place of her wishes for the children.

¶14 The District Court applied the grandparent contact statute as interpreted in *Troxel* and *Polasek*. In *Troxel,* the paternal grandparents petitioned for contact with their grandchildren. The Washington statute under which they requested contact provided that "*any* person may petition the court for visitation rights at *any* time." *Troxel*, 120 S. Ct. at 2054 (citing Wash. Rev. Code § 26.10.160(3) (emphasis added)). The United States Supreme Court invalidated the statute as "breathtakingly broad," noting that it gave no weight to the parent's wishes, instead relying "solely on the judge's determination of the child's best interest." *Troxel*, 120 S. Ct. at 2061. In *Polasek*, this Court concluded that the Montana's grandparent statute is consistent with the *Troxel* analysis. *Polasek,* ¶ 14.

¶15 In the case at bar, all parties agree that Angela is a fit parent and thus, there is a presumption in favor of her wishes. Moreover, Angela does not oppose grandparent contact. The only question here is whether Claire has established by clear and convincing evidence that it is in the children's best interest to have extended visits in Washington State despite Angela's wishes to the contrary.

¶16 Angela opposes the visits to Washington for a number of reasons. First, she voiced concern over Claire's ability to physically keep up with the children and her use of prescription pain medication, particularly while driving with the children. Second, she testified that she was unfamiliar with Claire's family and the children had little contact with Claire in recent years. Lastly, she expressed reservations due to the children's young ages and the fact that they had spent very little time away from their mother. In

5

particular, Angela noted that C.A.G. suffers from Attention Deficit Hyperactive Disorder and worried that Claire would be unable to meet the demands of caring for a special needs child.

¶17 The District Court considered a number of factors that support reestablishing contact. Claire is the only link to the children's deceased father's family and a continued relationship with the paternal side of their family is in the best interest of the children. Angela's concern over Claire's medication was countered by evidence that Claire is under a physician's care, has no symptoms of substance abuse, and successfully manages the pain while caring for other young children. Mr. Blackard's testimony further bolstered the evidence rebutting Angela's concern over Claire's competency.

¶18 Testimony at the hearing established the long-term relationship between Claire and the children. She cared for them as infants, enjoyed a loving relationship with them while the parents were still married, and attempted to maintain that relationship after their father's death. Angela's concerns regarding the children's unfamiliarity with Claire was rebutted by evidence that the children knew who Claire was, referred to her as "Meema," and expressed an interest in seeing her again. Further, the breakdown in communication between Claire and the children was caused, at least in part, by Angela's decision to block Claire's phone number and not provide her with an updated address. And, the plan enables the children to build a relationship via phone conversations, Skype, and visits in Billings.

¶19 However, as to the extended visits in Washington State, the District Court incorrectly concluded that the presumption in favor of Angela's wishes was rebutted.

6

Angela had concerns about whether an extended visit would be appropriate for her young children. Claire failed to present clear and convincing evidence regarding the extended visits sufficient to rebut the statutory presumption in favor of the mother's wishes. Moreover, Angela did not rule out such contact in the future. Claire's brief argues that "[f]irst and foremost, Angela did not make a compelling case that she has been acting in the children's best interests." That argument misconstrues the statutorily created rebuttable presumption. It is the grandparent who must supply the evidence to overcome the presumption. The District Court did not specifically list any factors to support the two separate weeks of visitation in Washington State and failed to afford Angela's wishes proper deference. Angela offered reasoned objections that were not rebutted by Claire.

¶20 Therefore, we affirm the order of the District Court with the exception of the provisions regarding extended visits in Washington State, which are reversed and remanded to the District Court to be stricken from the order.

¶21 *Issue Two: Whether the District Court erred by adopting parenting-plan rights and duties in the Grandparent-Grandchild Contact Plan?*

¶22 Angela argues that the District Court erred by inserting parenting-plan rights and duties into the Grandparent-Grandchild Contact Plan. We have held, given the different constitutional interests involved, it is inappropriate to apply parenting plan standards to a grandparent contact plan. *Snyder v. Spaulding,* 2010 MT 151, ¶ 10, 357 Mont. 34, 235 P.3d 578.

¶23 Although the District Court used parenting plan terminology in the plan, the order addressed the requirements of the grandparent-grandchild contact statute. It is clear from

7

the objectives of the plan that the purpose was to provide for a relationship between the grandmother and the children, not to establish a parent-child relationship with its associated rights and obligations.

¶24 Angela further maintains that the plan's "sharing information" section suggests that Claire would be involved in health and education decision making. This argument is incorrect. The section requires that the parties keep each other informed about the children's ongoing health and educational needs. The exchange of information is necessary to ensure that the children are appropriately cared for during visits and provides no decision making power to Claire.

## CONCLUSION

¶25 The District Court correctly interpreted and applied the grandparent-grandchild contact statute, with the exception of the out-of-state visitation provisions adopted over the mother's objections. The order of the District Court is affirmed in part, reversed in part, and remanded to the District Court to strike the out-of-state visitation provisions.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA