FILED

November 25 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0145

DA 14-0145

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 306

IN RE THE PARENTING OF
C.T.C., f/n/a C.T.E-H.,

KAREN HIGGINS,

      Petitioner and Appellee,

  v.

TRACY MARIE CUMBER and RANDY
CUMBER,

      Respondents and Appellants.


APPEAL FROM:    District Court of the Seventeenth Judicial District,
                  In and For the County of Valley, Cause No. DR-10-30
                  Honorable John C. McKeon, Presiding Judge


COUNSEL OF RECORD:

        For Appellants:

                Terrance L. Toavs, Law Offices of Terrance L. Toavs, PLLC; Wolf Point,
                Montana

        For Appellee:

                Mark E. Westveer, Westveer Law Office LLC; Stanford, Montana


                              Submitted on Briefs:  October 15, 2014
                                      Decided:  November 25, 2014


Filed:

                                          
                              Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Tracy Marie Cumber and Randy Cumber (the Cumbers) appeal from the order of the Montana Seventeenth Judicial District Court, Valley County, granting Karen Higgins (Karen) visitation with the Cumbers' child, C.T.C. We reverse the order and remand for proceedings consistent with this Opinion.

## ISSUES

¶2 We review the following issue: Was the District Court's assessment of C.T.C.'s best interests clearly erroneous? As our review of this issue is dispositive, we decline to reach the two additional issues the parties presented for consideration.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 C.T.C. was born in January 2003 to Tracy Cumber (Tracy). Soon thereafter, paternity and custody proceedings were initiated, and Steven Higgins (Steven) was found to be the birth father of C.T.C. and was designated the primary residential parent, effective July 1, 2004.

¶4 On August 7, 2004, Steven married Karen. C.T.C. resided primarily with Steven and Karen for approximately the next five years. Karen became an important parental figure to C.T.C. during this time period. She performed many of the essential parenting responsibilities and was called "mom" by C.T.C. Karen never adopted C.T.C., however.

¶5 Steven died on October 15, 2009. C.T.C. remained with Karen for a short time following Steven's death, but on November 17, 2009, Tracy was granted primary residential custody of the child, and shortly thereafter, C.T.C. started living with Tracy and her husband,

2

Randy Cumber (Randy). C.T.C has remained with the Cumbers since that date. Randy adopted C.T.C. in 2011.

¶6 Beginning in November 2009, Karen made efforts to remain in contact with C.T.C. For some time, Karen maintained telephone and email correspondence with C.T.C. and Tracy. Eventually, however, Tracy made it clear that she valued her privacy with C.T.C. and ended communication between C.T.C. and Karen.

¶7 On May 12, 2010, Karen filed a petition in the District Court, requesting visitation with C.T.C. Tracy opposed the petition. In late 2010, Karen and Tracy entered into a settlement agreement, but this agreement was subsequently modified and then set aside altogether. Randy intervened in July 2013, and a hearing was held on the matter on December 17 and 18, 2013.

¶8 Tracy and Randy each testified as to their wishes for C.T.C. at the hearing. Tracy's testimony included:

> Q. What is . . . your wish as [C.T.C.]'s mother concerning the request for time filed by Karen Higgins in this case?
> A. The visitation that she wants? . . . I want the decision. . . . I'm the mother, and Randy and I as [C.T.C.]'s parents are going to make that decision for [C.T.C.], and we will make the best decision for [C.T.C.], and it also needs to be [C.T.C.]'s choice, and that's what we've decided as a family.
>
> . . .
>
> Q. But she wants to see the child. Don't you understand that?
> A. And [C.T.C.] does not want to see her, nor is it my decision at this time. I have decided it's in his best interest to allow him peace within our home, within our community.

Similarly, Randy's testimony included:

> Q. What is your . . . wish, Mr. Cumber, with respect to the custody petition

here?

A. I wish to let [C.T.C.] be the boy he wants to be, and be done with all the stress that's been in his life since the day I've known him.

. . .

Q. So what concerns you? . . . What's the big deal about forcing [C.T.C.] to see Karen Higgins?

A. Because he does not want to, and I don't think that we need to force him into doing something he does not want to do.

¶9 Following the hearing, the District Court issued an order, making findings of fact, conclusions of law, and granting Karen's petition for visitation. Among other things, the order granted Karen a weekend per month of face-to-face visitation with C.T.C. and two consecutive weeks of visitation in the summer. The order allowed Karen to travel with C.T.C. outside of the Cumbers' community of residence during the summer visitation periods. The Cumbers appeal.

**STANDARDS OF REVIEW**

¶10 This Court reviews a district court's interpretation and application of statutes for correctness and findings of fact to determine whether the findings are clearly erroneous. *Hansen v. Moats (In re Parenting of S.J.H.)*, 2014 MT 40, ¶ 8, 374 Mont. 31, 318 P.3d 1021. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if a review of the evidence leaves this Court with a definite and firm conviction that a mistake has been made. *Hansen*, ¶ 8 (citing *Puccinelli v. Puccinelli*, 2012 MT 46, ¶ 13, 364 Mont. 235, 272 P.3d 117).

**DISCUSSION**

¶11 *Was the District Court's assessment of C.T.C.'s best interests clearly erroneous?*

4

¶12 The Cumbers argue that the District Court did not properly consider their parental wishes when it determined that the visitation schedule was in the best interests of C.T.C. They claim that a district court must defer to the wishes of a parent, and that for this reason the District Court erred by ordering visitation with Karen over their objection. Karen responds that the District Court was allowed to grant visitation pursuant to § 40-4-228(3), MCA, without considering the wishes of C.T.C.'s parents.

¶13 Section 40-4-228(3), MCA, allows a district court to grant a nonparent visitation with a child based solely "on the best interests of the child." Section 40-4-228(3), MCA; *Grice v. Price (In re A.P.P.)*, 2011 MT 50, ¶ 21, 359 Mont. 386, 251 P.3d 127. Section 40-4-212, MCA, provides some guidance for determining what is in the best interests of the child. It states that a court "shall consider all relevant parenting factors, which may include . . . the wishes of the child's parent or parents." Section 40-4-212(1), MCA. The code is silent, however, on how courts ought to balance the relevant parenting factors or whether courts should afford a parent's wishes any special deference. *See* §§ 40-4-212 and 40-4-228, MCA.

¶14 We have previously recognized that "parents have a fundamental constitutional right 'to make decisions concerning the care, custody, and control of their children'" and that fit parents are presumed to act in their child's best interests. *Polasek v. Omura*, 2006 MT 103, ¶¶ 14-15, 332 Mont. 157, 136 P.3d 519 (quoting *Troxel v. Granville*, 530 U.S. 57, 66, 68, 120 S. Ct. 2054, 2060-61 (2000)). Accordingly, in the context of a nonparent's claim for visitation, we have required courts to presume that a fit parent's wishes are in the best

interests of the child.[1] *Polasek*, ¶ 15; *see In re Grandparent/Grandchild Contact of C.A.G.*, 2014 MT 290, ¶¶ 12, 14, 376 Mont. 540, ___ P.3d ___.

¶15   In *Polasek*, we construed the best interest of the child standard of § 40-9-102, MCA. *See Polasek*, ¶¶ 10, 14-15; *C.A.G.*, ¶ 14.  At the time of our decision, that statute imposed a best interests standard for granting visitation similar to the standard used by § 40-4-228(3), MCA.  It read: "Grandparent-grandchild contact granted under this section may be granted only upon a finding by the court, after a hearing, that the contact would be in the best interest of the child."  Section 40-9-102(2), MCA (2005); *Polasek*, ¶ 10 n.2.

¶16   While our decision in *Polasek* construed a statute having to do with grandparent-grandchild visitation, our analysis is equally applicable to the nonparent visitation statute at issue in the present case.  In *Polasek*, we focused on protecting a parent's fundamental rights against a claim for visitation by a party without similar rights in the child; our analysis was not concerned with grandparents as such but with grandparents as nonparents.  *See Polasek,* ¶¶ 13-15; *C.A.G.*, ¶ 14.  As we later stated in *Snyder v. Spaulding*, 2010 MT 151, 357 Mont. 34, 235 P.3d 578, distinguishing parenting actions between a parent and a grandparent from those between parents:

> In the latter context, the central issue is the division of parenting responsibilities between the parents, whereas in the former context, the issue is contact between a child and a nonparent over the parent's objection. This is a critical distinction. Both parties to a "parenting plan" are "parents"; and, in

---

[1] Although the cases in which we have done so use the term "contact" rather than "visitation," we have treated these terms synonymously with regard to their effect on a parent's fundamental right to the care, custody, and control of his or her children. *See Polasek*, ¶¶ 12-14 (applying *Troxel*, which uses the term "visitation," to the best interests standard of the grandparent contact statute); *C.A.G.*, ¶ 14.  Given the language of § 40-4-228(3), MCA, the statute controlling this case, we will use the term "visitation" here.

> this sense, both are possessed of the same fundamental rights with respect to the parenting of their child. But the same is not true in grandparent-contact cases, where one party is a nonparent asking a court to overturn the decision of a parent notwithstanding the parent's fundamental right to make decisions concerning her child's associates. This second scenario requires delicate balancing of the rights of the parent vis-a-vis the interests of the nonparent, as well as the interests of the child.

*Snyder*, ¶ 10; *accord Polasek* ¶¶ 13-15. Based on the similarities in the relevant code provisions and the interests of the parties, our holding in *Polasek* is directly applicable to the case at bar.

¶17 Although we have previously declined to apply the reasoning of *Polasek* to the best interests analysis of § 40-4-228(2), MCA, that statute and our decisions interpreting it are distinguishable such that we are not barred from applying *Polasek* here. Section 40-4-228(2), MCA, allows a district court to grant a parental interest to a nonparent, but the statute requires the district court to make several findings in addition to the bests interests of the child. Based on these additional requirements, we found the reasoning of *Polasek* to be inapplicable to § 40-4-228(2), MCA. *See Kulstad v. Maniaci*, 2009 MT 326, ¶¶ 68-70, 352 Mont. 513, 220 P.3d 595; *Filpula v. Ankney (In re L.F.A.)*, 2009 MT 363, ¶¶ 13, 16, 18, 353 Mont. 220, 220 P.3d 391. We did not consider a grant of visitation under § 40-4-228(3), MCA, in either *Kulstad* or *Filpula*, nor does that statute include the additional, distinguishing requirements of § 40-4-228(2), MCA. Thus, insofar as the statutory process and requirements for granting a parental interest to a nonparent are distinguishable from those for granting visitation, *Kulstad* and *Filpula* do not prevent us from applying *Polasek* here. *See Kulstad*, ¶¶ 68-70; *Filpula*, ¶¶ 13, 16, 18; *Grice*, ¶¶ 9, 21; *compare* § 40-4-228(3), MCA, *with* § 40-4-228(2), MCA.

¶18    Accordingly, we again recognize that a parent has a fundamental right to the care and custody of his or her child, and that fit parents are presumed to act in their child's best interests. *Polasek*, ¶¶ 14-15; *Troxel*, 530 U.S. at 66, 68, 120 S. Ct. at 2060-61. And, we reaffirm our application in *Polasek* of *Troxel* to nonparent petitions for visitation.

¶19    Thus, when considering a claim for visitation by a nonparent that is contrary to the wishes of a parent, a court must determine whether the child's parent is fit. *Polasek*, ¶ 15; *Troxel*, 530 U.S. at 68, 120 S. Ct. at 2061. In this context, a parent is fit if he or she "adequately cares for his or her children." *Polasek*, ¶ 15 (quoting *Troxel*, 530 U.S. at 68, 120 S. Ct. at 2061). If the parent is fit, the court must recognize a presumption in favor of a parent's wishes as to visitation. *Polasek*, ¶ 15; *Troxel*, 530 U.S. at 72-73, 120 S. Ct. at 2064. The presumption may be rebutted if the petitioning nonparent proves by clear and convincing evidence that it is in the child's best interests to have visitation with the nonparent. *Polasek*, ¶ 15. If the parent is not fit, no presumption arises and the parent's wishes are due no deference in determining the child's best interests. *Polasek*, ¶ 15.

¶20    In the present case, the Cumbers wished for the District Court to let them decide whether and when to let C.T.C. have contact with Karen. As such, the District Court should have considered the Cumbers' fitness as parents. If it found that the Cumbers were fit, the District Court should have presumed that their wishes, as the wishes of C.T.C.'s parents, represented C.T.C.'s best interests. Yet, there is no indication that the District Court evaluated the Cumbers' fitness as parents or made a presumption in favor of the Cumbers' wishes. As such, it erred by granting visitation to Karen that was contrary to the Cumbers' wishes. While the District Court stated that visitation was in the best interest of C.T.C. and

8

that it "considered all [of the § 40-4-212, MCA,] factors," this mere recitation is not enough to support the visitation ordered, without a finding that the Cumbers were unfit or that the presumption in favor of their wishes had been rebutted. Because the District Court did not apply the correct analysis, as outlined above, we reverse the District Court's visitation order and remand for further proceedings consistent with this Opinion.

## CONCLUSION

¶21 For the foregoing reasons, we hold that the District Court did not apply the correct analysis when it determined that visitation was in the best interests of C.T.C. We reverse the District Court's order granting visitation and remand for proceedings consistent with this Opinion. Given this decision, we decline to reach either the issue of whether the District Court in fact granted Karen visitation or the issue of whether § 40-4-228(3), MCA, was unconstitutional as applied.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER