IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Matter of:

JOSEPH FLANIGAN, *Petitioner/Appellee,*

*v.*

PATRICK KITTELSON, *Respondent/Appellant.*

No. 1 CA-CV 24-0886 FC

FILED 08-07-2025

---

Appeal from the Superior Court in Mohave County
No. S8015DO202400559
The Honorable Aaron Demke, Judge *Pro Tempore*

**VACATED AND REMANDED**

---

COUNSEL

Whitney Whitney Baldridge Atkinson, Kingman
By Jacob W. Baldridge and Christopher Stafford (Rule 39(c) Certified
Limited Practice Graduate)
*Counsel for Petitioner/Appellee*

Aspey Watkins & Diesel, PLLC, Flagstaff
By Michael J. Wozniak and Morgan M. Sansone
*Counsel for Respondent/Appellant*

---

## OPINION

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        Patrick Kittelson ("Father") appeals from a third-party visitation award of his children to Joseph Flanigan ("Boyfriend"), the boyfriend of his deceased ex-wife, Brandy Tuitama ("Mother"). Father argues that the superior court failed to afford his determination of the children's best interests "special weight" as required for a fit parent under Arizona Revised Statutes ("A.R.S.") § 25-409(E), and that the visitation granted to Boyfriend was not "minimally intrusive" as required by *McGovern v. McGovern*, 201 Ariz. 172, 177, ¶ 16 (App. 2001), and *Borja v. Borja*, 254 Ariz. 309, 314, ¶ 16 (App. 2022).

¶2        We hold that to recognize the special weight afforded a fit parent's decision on third-party visitation, the individual requesting such visitation must show by clear and convincing evidence that the visitation is in the child's best interests, and the court must find and explain why the fit parent's best-interests determination is incorrect. Although sufficient evidence in the record could support a finding that some visitation with Boyfriend was in the children's best interests, the court failed to find and explain why its assessment of the evidence should trump Father's decision to deny visitation to Boyfriend. Further, even assuming the superior court correctly found, over Father's objection, that some visitation with Boyfriend was appropriate, the visitation awarded here was more than minimally intrusive. We vacate the visitation order and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶3        Father and Mother had three children together. The eldest (born in 2007) has reached the age of majority and is no longer subject to family-court jurisdiction. The two younger children (born in 2017 and 2019) are the subject of the visitation order on appeal.

¶4        In 2023, Father and Mother divorced, with the parenting time of their three children split equally between them. Before or during the

divorce proceedings, both parents began relationships with other individuals. Father later remarried, and Mother was in a three-year relationship with Boyfriend. Boyfriend and Mother lived together in Boyfriend's home, and Mother's parenting time occurred there. During Mother's parenting time, Boyfriend would care for the children, including taking them to school and doctor's appointments, helping with the morning and bedtime routines, attending their school events, and helping with their homework. The children called Boyfriend's parents "Nanny" and "Papa," and Boyfriend's niece and nephew were the younger children's best friends. All three of Father's children saw Boyfriend as a father figure.

¶5         In June 2024, Mother committed suicide outside Boyfriend's home. All three children were inside the house at the time, but the younger two children were not exposed to the suicide scene. The next day, Boyfriend, Father, and the children's stepmother told the children that Mother had died. Father took the two younger children to his home, but the eldest child remained with Boyfriend.

¶6         Ten days after Mother's death, Boyfriend petitioned for emergency parenting time in loco parentis[1] for the two younger children. Later that same day, the court granted Boyfriend emergency parenting time with the children in the "discretion of [Boyfriend]." Boyfriend immediately went to Father's home and took custody of the children. Boyfriend returned the children to Father five days later.

¶7         Three weeks later, the court reduced Boyfriend's emergency parenting time to the first and third weekend of each month from Thursday evening to Sunday evening. Later, the court held a trial on the visitation issue. The eldest child and Boyfriend testified about the children's relationship and bond with Boyfriend. Meanwhile, Father and the children's counselor expressed their concerns about Boyfriend's visitation, noting the children were returning to where Mother died, the disruption to the children's schedule, and the potential effect on the children's grieving.

¶8         The court found maintaining a relationship with Boyfriend was in the children's best interests because of their "significant and ongoing bond" with him. It continued Boyfriend's two monthly weekends of visitation, which would include holidays and birthdays if they coincided

---

[1]         "'In loco parentis' means a person who has been treated as a parent by a child and who has formed a meaningful parental relationship with a child for a substantial period of time." A.R.S. § 25-401(1).

with the visitation. It also permitted Boyfriend to travel with the children out-of-state without Father's permission. Father appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

**¶9**        Father claims two errors in the court's visitation order. First, he argues that, as a fit parent, the court failed to afford "special weight" to his determination about his children's best interests. Next, he argues the court failed to make Boyfriend's visitation schedule "minimally intrusive" on Father's right to parent his children.

**¶10**        We will not disturb a third-party visitation award absent an abuse of discretion in assessing the evidence. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 120, ¶ 36 (2018). We review the evidence in the most favorable light to support the superior court's ruling. *See id.* at ¶ 41. "We review issues of statutory interpretation and constitutional law *de novo*." *Douros v. Morse*, 258 Ariz. 546, 550, ¶ 13 (App. 2024).

## A.        A Court Is Limited When Awarding Third-Party Visitation.

**¶11**        "Prior to the enactment of [the] visitation statutes, [third parties] had no legal rights to visitation . . . ." *Sands v. Sands*, 157 Ariz. 322, 323 (App. 1988). Under the current statute, an individual other than a child's "legal parent" can petition the court for legal decision-making, placement, or visitation with the child. A.R.S. § 25-409(A), (C). But "[p]arents have a fundamental right, protected by the Fourteenth Amendment, to the 'care, custody, and control of their children.'" *Borja*, 254 Ariz. at 313, ¶ 8 (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)). This right protects against "arbitrary intrusion into fit parents' decisions regarding their children," including granting third parties the right to visitation. *Id.*

**¶12**        In *McGovern*, we distilled two "constitutionally based principles" from *Troxel* that must guide a court's visitation analysis. 201 Ariz. at 177, ¶ 17; *see also Friedman*, 244 Ariz. at 116, ¶ 16 (Our supreme court recognized that *McGovern* correctly stated the constitutional principles.). First, "court[s] should recognize and apply a [rebuttable] presumption that a fit parent acts in his or her child's best interest in . . . [making] decisions concerning [] visitation." *McGovern*, 201 Ariz. at 177, ¶ 17. Second, courts must afford "'some special weight' to a fit parent's determination of whether visitation is in the child's best interest" and "'significant weight' to a parent's voluntary agreement to some visitation, albeit not as much visitation as the [non-parent] desires." *Id.* at 177–78, ¶ 18 (quoting *Troxel*,

530 U.S. at 70–72); *see also* A.R.S. § 1-602(A) (All parental rights are reserved exclusively to a minor child's fit parents, emphasizing the fundamental right of fit parents to direct the upbringing, education, and care of their children.).

¶13　　　　Parental fitness is a crucial aspect of any third-party visitation case, given the presumption that a fit parent acts in his or her child's best interests. *Troxel*, 530 U.S. at 68. "[S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68–69, *aff'g In re Custody of Smith*, 969 P.2d 21, 31 (Wash. 1988) (The court held that "[p]arents have a right to limit visitation of their children with third persons," and that between parents and judges, "the parents should be the ones to choose whether to expose their children to certain people or ideas."). And a parent is presumed to be fit unless there has been an adjudication of unfitness. *See Friedman*, 244 Ariz. at 119, ¶ 33.

¶14　　　　In sum, to grant third-party visitation, a court must first find that visitation is in the best interests of the child and that one of several circumstances has occurred, including that one of the child's legal parents is deceased. A.R.S. § 25-409(C). If a court determines that the legal parent, defined as the child's "biological or adoptive parent whose parental rights have not been terminated," A.R.S. § 25-401(4), is fit, then that parent is entitled to a presumption that his or her legal decision-making is in the child's best interests, A.R.S. § 25-409(B). The fit parent's opinions on visitation issues are entitled to "special weight." A.R.S. § 25-409(E). The court must then, while giving the fit parent's opinion about the child's best interests "special weight," consider "all relevant factors," including the statutorily enumerated factors. *Id.* If a court finds that visitation is in the child's best interests, it must create a visitation plan that is "as minimally intrusive as possible" on the parents' "superior right to the custody and care of their children." *Borja*, 254 Ariz. at 314, ¶ 16 (quoting *McGovern*, 201 Ariz. at 177, ¶ 16).

**B.　　The Court Failed to Explain Why Father's Determination Was Not in the Children's Best Interests.**

¶15　　　　As noted in *McGovern*, the Court in *Troxel* did not establish what level of "special weight" must be afforded, instead leaving the issue "for development on a case-by-case basis." *McGovern*, 201 Ariz. at 178, ¶ 18 (quotation omitted); *see Troxel*, 530 U.S. at 73 (The Court declined to rule on

the scope of the parental due process right in the visitation context because "state-court adjudication in this context occurs on a case-by-case basis."). Until this point, Arizona courts have not defined what level of "special weight" a parent's determination is entitled to. But the term "special weight," as used in A.R.S. § 25-409, is co-extensive with the phrase as used in *Troxel*. *Friedman*, 244 Ariz. at 116-17, ¶ 20.

**¶16** In *Douros*, the concurrence suggested that to afford this term its proper weight, that is, to give a fit parent's opinion special weight, the party requesting visitation must rebut the parent's determination of the child's best interests by clear and convincing evidence. 258 Ariz. at 553, ¶ 38 (Catlett, J., concurring); *see also Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005) (The clear and convincing evidence standard requires "the thing to be proved is highly probable or reasonably certain." (quotation omitted)). We agree.

**¶17** The clear and convincing evidence standard is the same standard used elsewhere when impinging on a parent's fundamental right to the care, custody, and control of his or her child. *See, e.g.*, A.R.S. § 8-537(B) (A court's statutory basis for terminating a parent-child relationship must be found by clear and convincing evidence.); A.R.S. § 25-409(B) (The grant of legal decision-making to a non-parent must be supported by clear and convincing evidence demonstrating that the parent with decision-making is not using it in the child's best interests.); *Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982) (Terminating parental rights requires, at a minimum, clear and convincing evidence supporting the state's allegations.). The clear and convincing standard also applies when other fundamental rights are at issue. *See In re Matter of Wood*, 257 Ariz. 549, 557, ¶ 23 (App. 2024) (The court applied a clear and convincing evidence standard to revoke an individual's fundamental right to vote because of incapacity, citing *Santosky*, 455 U.S. at 769.); *United States v. Salerno*, 481 U.S. 739, 750-51 (1987) (When an articulable threat is proved by clear and convincing evidence, pretrial detention with no release conditions does not impede the fundamental right to liberty.).

**¶18** Other states have applied a clear and convincing evidentiary standard for third-party visitation, either to rebut a fit parent's visitation determination or to establish entitlement to visitation, or both. *See, e.g.*, *Ailport v. Ailport*, 507 P.3d 427, 442, ¶ 43 (Wyo. 2022) (both); *In re C.A.G.*, 337 P.3d 751, 752, ¶ 12 (Mont. 2014) (rebut); *Walker v. Blair*, 382 S.W.3d 862, 873 (Ky. 2012) (same); *Rich v. Thatcher*, 132 Cal. Rptr. 3d 897, 901 (Cal. Ct. App. 2011) (same); Okla. Stat. tit. 43, § 109.4(A)(1)(b) (same); S.C. Code Ann. § 63-3-530(A)(33) (same); *Hawkins v. Williams*, 314 P.3d 1202, 1204-05

(Alaska 2013) (entitlement); *Nelson v. Nelson*, 674 N.W.2d 473, 479 (Neb. 2004) (same); *In re C.D.G.D.*, 800 N.W.2d 652, 656 (Minn. Ct. App. 2011) (same); Ga. Code Ann. § 19-7-3(c)(1), (d)(1) (same); Va. Code. Ann. § 20-124.2(B) (same); Conn. Gen. Stat. § 46b-59 (same).

**¶19**　　　Not all states agree. Some use standards other than clear and convincing evidence for granting visitation, including, at times, the preponderance of the evidence standard. *See, e.g.*, *Koshko v. Haining*, 921 A.2d 171, 192-93 (Md. Ct. App. 2007) (The Maryland standard requires a threshold showing of "either parental unfitness or exceptional circumstances indicating that the lack of grandparental visitation has a significant deleterious effect" on the children.); *Blixt v. Blixt*, 774 N.E.2d 1052, 1060 (Mass. 2002) (The Massachusetts court found proof by a preponderance of the evidence that failure to grant visitation would cause "significant harm by adversely affecting the child's health, safety, or welfare."); *Moriarty v. Bradt*, 827 A.2d 204, 233 (N.J. 2003) (same); Tex. Fam. Code Ann. § 153.433(a)(2) (same). But the states that use a lesser standard require a showing of "harm" to the child in some fashion—a position rejected by our supreme court. *Friedman*, 244 Ariz. at 116, ¶ 19.

**¶20**　　　We join those states applying the clear and convincing standard because third-party visitation impinges on a fit parent's fundamental right to the care, custody, and control of his or her child. *See Borja*, 254 Ariz. at 313, ¶ 8; *see also* A.R.S. § 1-602(A). Thus, we hold that a third party must rebut a fit parent's determination of the child's best interests by clear and convincing evidence. And if a third party has presented evidence rebutting the parent's opinion, the court must explain why visitation is in the best interests of the child. *Douros*, 258 Ariz. at 551, ¶ 21. To afford the special weight a fit parent is entitled to, a court must provide "some analysis why [its] evaluation of the child's best interests trumps that of the fit parent." *Id.* Although a court's analysis of the third party's rebuttal evidence and the reasons overriding the fit parent's opinion may (and often will) overlap, these are still two distinct steps the court must take. The former questions whether the third party met its burden of proof, but the latter ensures that the *court* granted the fit parent's opinion special weight.

**¶21**　　　Turning now to this case, the court did not find, nor did Boyfriend allege, that Father was an unfit parent. As a result, Father's decision to refuse Boyfriend visitation was entitled to special weight. Boyfriend sought to rebut Father's determination by presenting evidence that visitation was in the children's best interests based on their close bonds with him and his family, his role in their lives, and the children's older

sibling's decision to reside with him. Given the evidence, the court could have found that Father's position for no visitation was not in the children's best interests.

**¶22** But the court erred by failing to explain why *its* analysis of the children's best interests trumped Father's determination, as a fit parent, to the contrary. Although the court found that Boyfriend acted in loco parentis and had a significant bond with the children, that does not, on its own, explain why Boyfriend's position, adopted by the court, trumped Father's determination. *See Egan v. Fridlund-Horne*, 221 Ariz. 229, 236, ¶¶ 24-25 (App. 2009) (The court rejected the argument that a non-parent's "significant relationships" with the child placed her in a different legal position from other non-parents.). Without such an explanation, we cannot say that the court afforded Father's opinion special weight.[2] As a result, we vacate the superior court's order and remand for the court to make the additional findings as necessary to afford Father's opinion special weight.

---

[2] In his reply brief, Father argues the court did not analyze the mandatory best-interests factors in A.R.S. § 25-409(E). Issues raised for the first time in a reply brief are waived. *See Ramos v. Nichols*, 252 Ariz. 519, 523, ¶ 11 (App. 2022). In any event, unless a party has requested findings of fact, a court need not make its findings on the A.R.S. § 25-409(E) factors on the record. *Compare* A.R.S. § 25-403(B) (The best-interests findings for decision-making and parenting time must be made "on the record.") *with* A.R.S. § 25-409(E) (The court must "consider all relevant factors," including those in the subsection.). Here, because there is no statutory requirement for findings, and the parties did not request findings, it is sufficient that the court's findings contemplated the § 25-409(E) factors. *See Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 297, ¶ 19 (App. 2020) ("[A]n appellate court may infer that the superior court has made whatever additional findings are necessary to sustain its judgment" so long as those findings are reasonably supported by the record and do not conflict with any express findings.); *but cf. Downs v. Scheffler*, 206 Ariz. 496, 500, ¶ 13 (App. 2003) (Under the former A.R.S. § 25-415, in a contested "custody" case between parent and grandparent, a court is "obliged to set forth specific factual findings on the record concerning all factors relevant to its determination.").

## C. The Court's Visitation Schedule Excessively Burdened Father's Parental Rights.

¶23     Although we vacate the visitation order, we analyze the court's visitation schedule to provide guidance on remand and to avoid further litigation on the issues raised. *See Buckholtz v. Buckholtz*, 246 Ariz. 126, 131, ¶ 17 (App. 2019) (An appellate court may address issues likely to recur on remand.). Whether a third-party visitation schedule is excessive is a "case-by-case determination," *Aldridge v. Martin*, 667 S.W.3d 612, 616 (Mo. Ct. App. 2023) (quotation omitted), which we review under an abuse of discretion and substantial evidence standard, *Graville v. Dodge*, 195 Ariz. 119, 128, ¶ 38 (App. 1999). While creating a minimally intrusive visitation schedule will always be fact-dependent, our cases and those from other states, which analyze the constitutional requirements, help explain the factors to consider.

### 1. A Visitation Order Is Not a Parenting Order.

¶24     Parenting time and visitation are distinct rights that our legislature has defined and established. "Parenting time" means the time that a parent has access to a child and is "responsible for providing the child with food, clothing and shelter and may make routine decisions concerning the child's care." A.R.S. § 25-401(5); *see also* A.R.S. § 25-401(3) ("Legal decision-making" means the legal right and responsibility of a parent to "make all nonemergency legal decisions for a child including those regarding education, health care, religious training and personal care decisions."); *Mesa v. O'Connor*, ___ Ariz. ___, ___, ¶ 23, 563 P.3d 1179, 1188 (App. 2025) ("Parenting time is the schedule of time when a parent cares for a child" and encompasses "what a parent may do during his or her parenting time.").

¶25     "Visitation," on the other hand, means only "a schedule of time that occurs with a child by someone other than a legal parent." A.R.S. § 25-401(7). A third party with only visitation has no legal decision-making authority or the ability to make non-emergency decisions for the child. *See Hustrulid v. Stakebake*, 253 Ariz. 569, 575, ¶ 16 (App. 2022) (A legal parent and third party cannot share decision-making authority or parenting time.); *Egan*, 221 Ariz. at 241, ¶ 45 (The court vacated a temporary visitation order that essentially granted custody rights to a non-parent because it allowed her to direct the upbringing of the child to practically the same extent as a legal parent.).

¶26 The right to third-party visitation arises only from statute. *See Sands*, 157 Ariz. at 323. But the right to custody and control of a child is "perhaps the oldest of the fundamental liberty interests recognized." *Troxel*, 530 U.S. at 65; *see also* A.R.S. § 1-602(A). While there is no bright-line rule about how much visitation time an order can contain and remain "minimally intrusive" on a parent's rights, a third party's visitation must be less than the parenting time a co-parent would receive. *Douros*, 258 Ariz. at 551, ¶ 25 ("Arizona's third-party visitation statute cannot be wielded to give a third party the same rights or visitation schedule as a non-custodial parent."); *see also T.W. ex rel. R.W. v. T.H.*, 393 S.W.3d 144, 149 (Mo. Ct. App. 2013) (Visitation "should not be on a par with parental visitation in custody matters."); *Hoeing v. Williams*, 880 N.E.2d 1217, 1221 (Ind. Ct. App. 2008) (Granting a grandparent visitation rights "nearly equivalent to those of a non-custodial parent" was prima facie error.).

### 2. There Are Factors a Court Should Consider in Crafting an Appropriate Visitation Order.

¶27 If a court finds that some visitation time is appropriate, the following, *infra* ¶¶ 28-32, are factors a court should consider in crafting a minimally intrusive visitation order. Because a minimally intrusive visitation order is based on the facts presented, the listed factors are not exhaustive but guidelines to consider.

¶28 The amount of court-ordered visitation must be minimally intrusive. When a parent voluntarily grants some third-party visitation, a court should begin its analysis by determining whether the visitation granted by the parent is sufficient. *See Douros*, 258 Ariz. at 555, ¶ 45 (Catlett, J., concurring) ("Where a parent has voluntarily agreed to some visitation, the court should give that decision 'significant weight,' even when the amount is less than the third-party desires."); *T.W.*, 393 S.W.3d at 149; *see also McGovern*, 201 Ariz. at 179, ¶ 24 ("[A] parent's willingness to allow some visitation is but one factor to consider under [A.R.S.] § 25-409."). Voluntarily granted visitation is an exercise of a parent's rights, while court-ordered visitation is a restriction of those same rights. *See Douros*, 258 Ariz. at 555, ¶ 45 (Catlett, J., concurring). Here, Father determined that visitation with Boyfriend was not in his children's best interests. So no visitation would be the starting point for the court's analysis.

¶29 Although a visitation schedule need not include flexibility, *see Borja*, 254 Ariz. at 315, ¶ 20, any discretion and flexibility in scheduling should be granted to the parent, not the third party, *id.* at 316, ¶ 24; *see Graville*, 195 Ariz. at 128, ¶ 39 (Flexibility for the parents in the visitation

schedule made it minimally intrusive.). To grant discretion to the third party (without a clear, reasoned basis to do so) increases the burden on the parent's rights.

¶30 A visitation schedule should, at most, minimally interfere with activities in the child's life that are part of their growth and upbringing. A.R.S. § 25-409(E)(4) (The court must consider the effect visitation may have "on the child's customary activities."); *see also Martin v. Coop*, 693 So.2d 912, 916 (Miss. 1997) (Mississippi courts must consider visitation's disruption of "school activities, summer activities," and disruptions resulting from the child being away from the home for extensive lengths of time.), *abrogated on other grounds*, *Smith v. Martin*, 222 So.3d 255 (Miss. 2017). For example, extensive weekend visitation may impact the child's ability to participate in activities such as sports, school events, or religious activities, and so a court should exercise caution when granting it. *See In re C.D.G.D.*, 800 N.W.2d at 659-60 (The court reversed a visitation schedule that could interfere with religious meetings and weekend "events that may be central to a child's healthy upbringing and consistent parental participation," like athletics, theater, music, travel, and scholastic projects.); *Swartz v. Swartz*, 720 N.E.2d 1219, 1222 (Ind. Ct. App. 1999) (A visitation schedule requiring Mother to get the third parties' permission for the child's activities on the third parties' weekends was not in the child's best interests.). While weekends may be a convenient time for visitation, interference in the child's life can impede the parent's right to control his or her upbringing. Thus, visitation on weekends may need to be minimal or flexible, at the discretion of the parent.

¶31 Visitation must also consider the importance of time with a parent around holidays and birthdays. A court-ordered visitation schedule leading to regular visitation on holidays or birthdays is likely an excessive burden on parental rights. *Borja*, 254 Ariz. at 315, ¶¶ 18-19; *see also In re C.D.G.D.*, 800 N.W.2d at 659-60 (A visitation order was not in the best interests of the child, including when grandmother would have several holidays as visitation.). But visitation that incidentally coincides with holidays, or visitation limited to one specific annual holiday, may be appropriate in some cases.

¶32 Finally, video or phone calls can be an appropriate and effective means of visitation when used carefully, despite our courts having previously considered some implementations excessively burdensome. *See Borja*, 254 Ariz. at 316, ¶ 27; *Graville*, 195 Ariz. at 128, ¶ 42. Video or phone calls may ameliorate intrusion into the parent's and child's lives, especially when the third party is geographically remote from the child. *See Dodd v.*

*Burleson*, 932 So.2d 912, 922, n.1 (Ala. Civ. App. 2005). Video or phone calls can alleviate other friction associated with visitation, such as added travel time and time away from parents. *See Clay v. Clay*, 552 S.W.3d 692, 698 (Mo. Ct. App. 2018) (Monthly video calls were minimally intrusive because they could take place at the parent's home with no limitation on the parent's presence.). But even video or phone calls must be ordered with caution. Requiring affirmative action by parents to facilitate such calls may infringe on a parent's rights. *Borja*, 254 Ariz. at 316, ¶ 27; *Graville*, 195 Ariz. at 128, ¶ 42. It is appropriate for the visitor to have a minimal ability to reach out, with the parent or child having the discretion to decline such calls, and for the parent or child to have the freedom to establish and implement further contact. *See Bazen v. Bazen*, 837 S.E.2d 23, 35 (S.C. 2019).

### 3. The Visitation Order Here Was Not Minimally Intrusive.

**¶33** The court awarded Boyfriend two weekends a month, for three days each weekend, as well as any holidays or birthdays that may fall during this schedule. It noted that visitation would not interrupt Thanksgiving or Christmas, but it would affect some upcoming Fourth of July celebrations and birthdays. The court also allowed Boyfriend to travel out-of-state with the children during his visitation without Father's consent.

**¶34** The schedule fails at the first hurdle because the visitation order approximates a parenting time order for a fit parent. *See Ertl v. Ertl*, 252 Ariz. 308, 311, 315-16, ¶¶ 5, 27 (App. 2021) (affirming parenting time for every other weekend). The visitation schedule is, therefore, more than minimally intrusive. *Accord T.W.*, 393 S.W.3d at 147 (Alternating weekends for two-and-a-half days, amounting to roughly twenty percent of the year, was an excessive burden on the mother's right to parent.); *Swartz*, 720 N.E.2d at 1222 (Grandparent visitation for alternating weekends was not in the child's best interests.). While we can envision a scenario in which a court may temporarily award substantial visitation to a non-parent to facilitate a smooth transition for the child into the exclusive care of the fit legal parent, the court did not do so here and did not explain why even a temporary award would be warranted over the fit parent's objection.

**¶35** Likewise, allowing Boyfriend to take the children out-of-state without Father's consent significantly impinges on Father's legal decision-making rights. *See* A.R.S. § 25-401(3). This intrusion is even more problematic because Boyfriend is not allowed to have joint legal decision-making authority. *See Hustrulid*, 253 Ariz. at 575, ¶ 16.

¶36        In making these observations, we are mindful that Boyfriend has acted in a parental capacity to the children, and they appear to want his support and care. But Father is a fit parent. Court-ordered visitation is not a parenting time plan, *see* A.R.S. § 25-403.02, nor is it a replacement for voluntary visitation. Court-ordered visitation is instead a means to ensure a minimal relationship with individuals when it is in the children's best interests. The court's visitation plan here exceeded those bounds.

¶37        The court erred by creating a visitation schedule that unduly interfered with Father's parental rights. On remand, if the court finds visitation over Father's objection to still be in the children's best interests, it should create a visitation schedule using the principles set forth above.

## ATTORNEY'S FEES AND COSTS ON APPEAL

¶38        Father requests his attorney's fees and costs on appeal under A.R.S. § 25-324. Neither party took unreasonable positions, and we lack any information on the parties' financial situations. Thus, per our discretion, we decline to award Father his fees incurred on appeal. But because Father is the prevailing party, we award him his costs incurred on appeal, provided he complies with ARCAP 21.

## CONCLUSION

¶39        We vacate the superior court's visitation order and remand for further proceedings consistent with this opinion. Given this ruling, we vacate the superior court's order denying Father's request for attorney's fees. We do so because we are vacating the order about visitation, and we do not reach Father's argument that the superior court substantively erred by denying his attorney's fees request. The superior court may reconsider the issue on remand.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR

13